Decided 3 August, 1903.

## BACKHAUS *v.* BUELLS.

[72 Pac. 976, 73 Pac. 342.]

APPEAL — STATUTES — MEANING OF "TRANSCRIPT."

1. The word "transcript," as used in Section 553, B. & C. Comp., providing that the appellant shall file a "transcript," or such an abstract as the rules of the appel-late court may require, of so much of the record as may be necessary to intelli-gently present the questions to be decided, does not now mean a copy of the judg-ment roll as it did before the amendment of 1899 (Laws 1899, p. 229), but rather a fair synopsis of the proceedings in the trial court relative to the questions reserved by appellant for further consideration. The transcript must be correct as to the matters involved, and sufficiently complete not to be misleading. It need not present the record as. to matters relied upon by the respondent, the latter be-ing protected by the right to ask for an additional record, under section 554.

REPLEVIN FOR UNSEGREGATED PART OF A LARGER MASS.

2. Where something remains to be done in preparing a chattel for delivery in pursuance of an executory contract of sale and purchase, as, in caring for a growing crop, selecting the part to be delivered and packing it for shipment, title thereto does not pass either on the signing of the contract, or on a breach of it, unless specially so provided. For instance, where a contract for the sale of a hop crop requires the seller to segregate the quantity of hops to be delivered, and put them into the condition required for acceptance, the performance of the labor necessary to the preparation of the hops for delivery is a condition precedent to the vesting of title in the buyer, in the absence of any contrary statement in the contract, and hence the contract does not pass a title sufficient to enable the buyer to maintain replevin.

CHATTEL MORTGAGE FOR FUTURE ADVANCES—TACKING DEBTS.

3. The future advances ordinarily contemplated by a mortgage security are such as may be made by the mortgagee himself, and, unless particularly provided for, the latter cannot enforce the mortgage for debts due by the mortgagor to others and assigned to him.

CHATTEL MORTGAGE— RIGHT TO POSSESSION—UNLIQUIDATED DAMAGES.

4. Upon a breach of the condition of a chattel mortgage the mortgagee is entitled to possession of the pledged property to apply it to the satisfaction of his debt, either by legal process or in the manner provided in the mortgage, but in both cases the amount of the obligation must be fixed. This case well illustrates the justice of such a construction of the respective rights of the parties to a chattel mortgage: A contract of purchase and sale having contained a hypothecation of its subject-matter as security for such damages as the buyer might sustain through the seller's failure to perform his part of the contract, the buyer is not entitled to possession of the property, upon a breach by the seller, unless the amount of his damage has been in some way ascertained ; and the result is the same whether the possession is claimed under Section 5636 or Section 5637 of B. & C. Comp.

REPLEVIN BY MORTGAGEE — DUTY AS TO FORECLOSING.

5. After a mortgagee or other lien claimant of personal property has secured possession thereof by right of the lien, he must proceed with reasonable promptness to foreclose — he will not be permitted to hold it indefinitely, thus treating it as his own : *Case T. Mach. Co.* v. *Campbell*, 14 Or. 460, overruled on this point.

MATERIAL AND IMMATERIAL EVIDENCE.

6. Where, in an action of replevin, if plaintiff was entitled to recover, it was on the theory that a contract security in the nature of a chattel mortgage conferred such right upon a breach of the conditions thereof, and he could not have secured such possession under the executory contract of sale, evidence that the buyer had tendered to the seller certain funds under the terms of the contract was immaterial.

From Marion : GEORGE H. BURNETT, Judge.

This is an action of replevin for hops, and resulted in a judgment for defendant, from which plaintiff appeals. A motion to dismiss the appeal for want of a proper record was overruled, the opinion being written by Mr. Justice WOLVERTON. Subsequently the case was heard on the merits of the appeal, and affirmed in an opinion by Mr. Chief Justice MOORE.

MOTION OVERRULED : AFFIRMED.

On Motion to Dismiss the Appeal.

*Mr. George G. Bingham* for the motion.

*Mr. Carey F. Martin, contra.*

Mr. Justice Wolverton delivered the opinion.

This is a motion to dismiss the appeal herein, because certain exhibits, designated B, C, D, E, and F, which are attached to and made a part of defendants' third and separate defense, are not contained either in the abstract or any transcript filed in this court. The purpose of the defense referred to was to set up a former adjudication, and these exhibits are copies of the complaint, answer, reply, motion for judgment, and judgment, in the first action. There was a motion interposed by defendants in the present cause for judgment on the pleadings, which was overruled by the trial court. In this ruling defendants insist that the court erred, and it is argued that because the exhibits referred to are omitted from the abstract they are unable to present the question here. It is manifest that if the motion for judgment was well taken the cause should have been finally concluded in defendants' favor, unless, through a proper exercise of the discretion of the trial court, some amendment was allowed by which to remedy the defect, and that without the missing record the defendants' assignment of error on the appeal cannot avail them on the trial of the cause here. The respondents are doubtless entitled to have this additional record here, and the question presented is who of the parties litigant should bring it up.

1. The respondents rely upon Section 554, B. & C. Comp., to sustain their position, which reads: "When it appears by affidavit to the satisfaction of the court that the transcript is incomplete in any particular substantially affecting the merits of the judgment or decree appealed from, on motion of the respondent the court shall make a rule

upon the clerk of the court below, requiring him to certify as to such alleged omission, and if true, to transmit to the appellate court a certified copy of the pleading, entry, order, or other paper omitted in the transcript; or, in such case, the respondent may move to dismiss the appeal, and the court shall allow such motion unless, on the cross motion of the appellant, it makes a rule upon the clerk concerning such omission, as provided in this section, upon such terms as may be just." The appellant insists that he has complied with the statute in bringing up so much of the record as will present the errors upon which he relies for a reversal of the judgment, and refers to Section 553, B. & C. Comp., to sustain his position. This section reads : "Upon the appeal being perfected, the appellant shall, within thirty days thereafter, file with the clerk of the appellate court a transcript or such an abstract as the rules of the appellate court may require, of so much of the record as may be necessary to intelligently present the questions to be decided by the appellate tribunal, together with a copy of the judgment or decree appealed from, the notice of appeal and proof of service thereof, and the undertaking on appeal."

It would seem that appellant has brought himself clearly within the purview of this latter section, as he has filed here an abstract of the record, sufficient to present the errors relied upon by him for reversal of the judgment, together with a copy of the judgment appealed from, the notice of appeal, and the undertaking, with proof of service of such notice and undertaking. The rules of the court concerning the abstract require that the appellant shall serve upon an attorney for each respondent a printed copy of so much of the record prepared as therein provided as may be necessary to a full understanding of the questions presented for decision, and file with the clerk of this court

*43 Or.—36*

proof of such service, etc. (Rule 4, 35 Or. 587, 591, 37 Pac. vi); and the form thereof is prescribed (Rule 9, 35 Or. 587, 595, 37 Pac. vii). It is also provided that, if the respondent shall deem the appellant's abstract imperfect or unfair, he may, within ten days after receiving a copy thereof, deliver to the appellant's counsel one, and to the clerk twelve, printed copies of such further or additional abstract, as he shall deem necessary to a full understanding of the questions involved in the appeal: Rule 5, 35 Or. 587, 593 (37 Pac. vi). Section 554 was enacted with a view of affording the respondent a remedy where the appellant failed to bring up such a transcript as was then provided by the preceding section, which has since been amended, and is now section 553. The transcript, as defined by subdivision 1, was to be a copy of the judgment roll or final record, etc. In its present or amended form it merely provides that the appellant may file a transcript or such an abstract as the rules of the appellate court may require of so much of the record as may be necessary to present intelligently the questions to be decided. So that the term "transcript," as it relates to the appeal, has been given a modified or different signification from that which originally obtained. Instead of being a copy of the judgment roll or final record it is now a certified copy of so much of the record as may be necessary to present intelligently the questions to be decided, which, as well as the abstract, must be accompanied with a copy of the judgment or decree appealed from, notice of appeal, etc. So that section 554 must now be interpreted with a view to its application to the new act relating to the transcript. The transcript and abstract are now, in substance, the same. The former, however, comes under a certificate of the clerk of the court, while the latter is prepared from the record by the party appealing. If a transcript has been adopted for effectuating the appeal, and it appears that it is incomplete in any particular affect-

ing the merits of the judgment or decree appealed from, the respondent may have the motion to dismiss, as employed in the present case. But, if the appellant has brought here such a transcript as is required by the preceding section, nothing more can be exacted of him, and the respondent should supply the missing record, if it is desired to present other questions upon his part in defense of the appeal.

Of course, if the transcript brought up by the appellant for the presentation of the questions relied upon by him for a reversal is incomplete and misleading, so as to present a false issue, then it must be admitted that the additional record ought to be at his expense. But it is otherwise where he has complied with the law, and where the respondent desires to present additional questions, and finds the record as exhibited by the transcript not full enough for that purpose. He must now bring that additional record here. The appellant cannot be expected to anticipate questions upon which the respondent may desire to insist, hence he could not be called upon to bring a record sufficient in all respects for that purpose. The rules of the court concerning the abstract were revised since the amendment of section 553, and proceed upon this principle, and may be fitly adopted as a proper interpretation of section 554, as it relates to the transcript. The appellant is therefore required to bring the record here by transcript or through the instrumentality of an abstract. In doing this, it is only necessary for him to incorporate therein such portions as will set forth intelligently the questions upon which he relies for a reversal. He must not present a garbled record or one that would show a different state of facts from that really existing, but must bring such parts of the real record as may be necessary to a full understanding of the questions presented for decision. When this has been done, the respondent must

do the rest if he desires to present other issues deemed important for his defense to the appeal.

The motion to dismiss will therefore be denied, and the respondent may have a rule upon the clerk of the trial court requiring him to complete the record in the particulars suggested.          MOTION OVERRULED.

## ON THE MERITS.

This action was begun November 5, 1902, by A. F. Backhaus against F. W. Buells, J. Wolford, and Archie Wolford, partners, as J. Wolford & Co., Wm. Brown, and others unknown, partners as Wm. Brown & Co., to recover the possession of 44 bales of hops, weighing 9,884 pounds, or $2,423, the value thereof, in case delivery could not be had, and $1,500 for the alleged wrongful detention of the same. The cause of action had its inception in the following contract:

"This instrument, Made and entered into this 17th day of March, 1902, between F. W. Buells, by occupation a farmer, of the County of Marion, State of Oregon, the party of the first part, and A. F. Backhaus or Agt., party of the second part, witnesseth :

That party of the first part does hereby agree to raise and sell, and does hereby sell and agree to deliver, to said party of the second part his successors or assigns (10,000) pounds (net) of hops crop of hops now being, standing, growing or to be grown on farm owned by F. W. Buells, situate about three miles east of Silverton, County of Marion, State of Oregon, and consisting of 54 acres, more or less, on which land there is now growing, or under cultivation 9½ acres of hops, and described as follows: Bounded by lands owned or possessed by the following-named persons : On the north by D. Leonard, on the east by A. Wolf, on the south by Coolidge and McClain, on the west by Tucker ; said hops to be the growth of the year 1902, and to be choice quality, sound condition, bright uniform color, fully matured, free from mould and from damage by vermin,

cleanly picked, well dried and cured, and put up in good merchantable order and condition, in new 24-ounce bale cloth, in bales of 185 to 200 lbs. each, gross weight (tare 7 pounds per bale). The said hops not to be the production of the first year's planting. All of said hops to be delivered to said party of the second part, his successors or assigns, in entire lot f. o. b. cars at Silverton, between Oct. first and October 30.

The party of the first part agrees to serve notice in writing upon the party of the second part at least 10 days before the day on which he proposes to tender delivery of said hops; but said notice shall not be sent until the entire lot is actually in bale and ready for delivery. And the said party of the first part further agrees that this contract has preference, both as to quality and quantity, over all other contracts made hereafter by persons in relation to said hops, and that the party of the second part may at any time, and until the full performance of this agreement, have free access to the above-described premises or any other premises where such hops may be.

The party of the second part agrees to pay the party of the first part, by checks, at the rate of (12) cents per pound therefor, in the manner following to wit: One (1.00) Dollars, at the time of signing hereof, the receipt whereof is hereby acknowledged, and that to enable the party of the first part to harvest said crop and prepare the same for market in the manner in which the party of the first part agrees to harvest and prepare the same will advance and loan to the party of the first part at or during picking time, as the same may be actually required to defray expenses of picking such hops, and of harvesting and curing the same, and for such purposes only, not exceeding, however, five cents for each pound of hops which may be grown on said lands, and which are by this agreement to them bargained and sold, and not exceeding $500, in all and the balance when said hops are delivered and accepted.

If the quality of said hops shall be inferior to hops above called for, the said party shall have the privilege of taking them, and reduction shall be made in price equal to the difference in value between such hops and those above called for.

It is expressly understood and agreed that advances are to be made only, if in the judgment of the party of the second part, the hop crop is in a condition that hops of the quality as above stipulated can be delivered.

And the party of the first part hereby conveys and mortgages to the party of the second part, his successors or assigns, all the crop of hops grown or to be grown on the premises hereinbefore described during the year 1902, as security for the payment of all advances and loans, which shall not exceed in the aggregate $500 and interest thereon, made hereunder, and as security for the faithful performance on the part of said party of the first part of the foregoing obligations, and of all agreements and covenants on the part of said party of the first part hereinbefore mentioned, and as security for the payment of any damages said second party his successors or assigns may sustain by reason of any failure on the part of said party of the first part to faithfully perform and carry out the agreements, covenants and obligations hereinbefore set forth and mentioned; and also all other obligations existing or that may be entered into by the parties hereto during the life of this contract.

Any insurance on said hops shall be for the benefit of said second party, and said second party may keep the hops insured for their full value from the time said hops are picked until delivery, at the expense of said first party, and deduct the expense of insurance from purchase price above agreed.

In Witness Whereof, the parties have hereunto set their hands and seals the day and year first above mentioned.

Executed in the presence of:

G. W. Dolan,                    F. W. Buells,     [Seal.]
J. K. Buff.                      A. F. Backhaus, [Seal.]
                          By T. E. Blakely, [Seal.]

State of Oregon, County of Marion — ss.: On this 17th day of March, A. D. 1902, personally came before me G. W. Dolan, a Notary Public in and for said County, the within named F. W. Buells, to me personally known to be the identical person described in and who executed the within instrument, and acknowledged to me that he exe-

cuted the same freely for the uses and purposes therein named.

Witness my hand and seal this 17th day of March, A. D. 1902.

G. W. DOLAN,

Notary Public.

```
+++++++
+ Notarial +
+  Seal.  +
+++++++
```

State of Oregon, County of Marion — ss.: I, F. W. Buells, being first duly sworn, on oath depose and say that the foregoing instrument is made in good faith, and without any design to hinder, delay or defraud creditors, and that the said crop of hops in the within instrument described, is the property of affiant, and is not encumbered except as to the within instrument.

F. W. BUELLS.

Taken, sworn to and subscribed before me G. W. Dolan, a Notary Public in and for said County and State this 17th day of March, 1902.

```
+++++++
+ Notarial +
+  Seal.  +
+++++++
```

G. W. DOLAN,

Notary Public."

The hops grown by Buells on said land in 1902 not having been delivered as provided for in the contract, this action was commenced, the complaint being in the usual form ; and thereafter, the plaintiff having made the proper affidavit and given the necessary undertaking, the sheriff of said county took possession of the hops and delivered them to the plaintiff, who shipped them out of the state. The answer of Buells and Wm. Brown, doing business as Wm. Brown & Co., having denied the material allegations of the complaint, averred, for a first separate defense, that Buells was the owner of the hops, which were of the value of $3,000, that he was in the possession thereof until they were wrongfully taken from him by the sheriff at plaintiff's instance, whereby he had been damaged in the sum of $1,000, and that the defendant J. Wolford, doing business as J. Wolford & Co., was a warehouseman with whom the hops had been stored, but that he had no interest therein. For a second defense, it is alleged that Buells entered into

an executory contract of sale, by the terms of which plaintiff agreed to advance and loan him during the picking season such sums of money as he might need to defray the expense of harvesting the crop, not exceeding 5 cents per pound ; that after commencing to pick the hops he required money for that purpose, and so informed the plaintiff, who notified him that he would not advance any sum therefor, whereupon the contract was by mutual consent rescinded, and Buells tendered to plaintiff $1, the amount received by him on account of the contract, and interest thereon, but, the plaintiff refusing to accept the same, the money was deposited with the clerk for him. For a further defense it is alleged that Brown & Co. never had any interest in or possession of said hops, and disclaimed all right thereto. The answer demands judgment for Buells in the sum of $3,000, the alleged value of the hops, and $1,000 as damages for their detention. The reply, having denied the material allegations of the answer, avers that the hops were not a choice quality or cleanly picked, but were, by Buells' direction, gathered with leaves and stems, notwithstanding which plaintiff elected to take them and to pay therefor the contract price, and so notified Buells, who refused to deliver them and repudiated the contract. The reply admits that Buells tendered $1.10 to plaintiff, but further avers that the latter's special agent, T. E. Blakely, advanced to Buells on account of the hops $8 April 8, 1902, and $10 June 30th of that year, no part of which sums has been repaid or tendered ; that plaintiff fully performed his part of the contract, and tendered $1,200, the purchase price of the hops, to Buells, who having refused to accept the same, said sum was deposited with the clerk for him. A trial being had, it resulted in a judgment for Buells, to the effect that he was the owner of the hops and entitled to the immediate possession thereof, and that he recover $40.77, as damages for their wrongful

detention, but, if possession of the hops could not be had, that he recover the sum of $2,500, the value thereof, and the plaintiff appeals.                                    AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. B. F. Bonham* and *Mr. Carey F. Martin.*

For respondent there was a brief and an oral argument by *Mr. L. J. Adams* and *Mr. Geo. G. Bingham.*

MR. CHIEF JUSTICE MOORE, after stating the facts as above, delivered the opinion of the court.

2. It is contended by plaintiff's counsel that under the contract of sale, and also as a consequence of a breach of the conditions of the chattel mortgage, their client was the owner of the hops, and after October 30, 1902, entitled to the possession thereof, and hence the court erred in charging the jury to return a verdict for Buells. It will be remembered that the contract was entered into by the parties March 17, 1902, and relates to a crop of hops to be grown that year, cleanly picked, well dried, and put up in good, merchantable order, in bales of specified weight, and delivered prior to October 30, 1902. By the terms of the contract, Buells was required to segregate the quantity of hops to be delivered, and put them into a condition for acceptance, thus, in the absence of any statement in the contract evidencing a contrary intention, showing only an executory contract of sale; and the labor necessary to their preparation for delivery was a condition precedent to vesting a title in the plaintiff. For a failure on Buells' part to comply with the terms of the agreement, no doubt, Backhaus could have maintained an action to recover the damages sustained in consequence of the breach; but, no title or right of possession having passed by such contract, whatever the rule may be elsewhere, it is settled in this state that replevin will not lie to recover possession of personal property under such circumstances: *Hubler* v. *Gas-*

*ton,* 9 Or. 66 (42 Am. Rep. 794); *Rosenthal* v. *Kahn,* 19 Or. 571 (24 Pac. 989); *Hamilton* v. *Gordon,* 22 Or. 557 (30 Pac. 495); *Faber* v. *Hougham,* 36 Or. 428 (59 Pac. 547, 1111). The plaintiff's right to recover the possession of the hops cannot, therefore, rest upon the executory contract for the sale thereof.

3. By the terms of the contract, Buells evidently mortgaged to Backhaus the crop of hops as security for the payment of all advances and loans; and no doubt can be entertained that, as between the parties, a lien was thereby intended to be created and impressed upon the property as security for the sums of money loaned or advanced on the faith thereof: *Nicklin* v. *Betts Spring Co.* 11 Or. 406 (5 Pac. 51, 50 Am. Rep. 477). Buells acknowledges the receipt of one dollar, and the pleadings admit that "long prior to the commencement of this action," said sum and interest were tendered to Backhaus; but his counsel contend that the testimony shows that Buells secured from plaintiff on account of the hops the further sum of $18, which not having been repaid or tendered, the latter was entitled to the possession of the hops, and, this being so, the court erred in charging the jury as hereinbefore stated. Whenever the condition of any chattel mortgage is broken, the mortgagee is entitled to the immediate possession of the mortgaged property; and, if it is not delivered to him upon demand he may recover it in an action for the possession thereof: B. & C. Comp. §§ 284, 5636. Any party having an interest in personal property, coupled with a right to the immediate possession thereof, acquires such an ownership as entitles him to invoke the remedy that said action affords: *Case Threshing Mach. Co.* v. *Campbell,* 14 Or. 460 (13 Pac. 324); *Marquam* v. *Sengfelder,* 24 Or. 2 (32 Pac. 676); *Kimball* v. *Redfield,* 33 Or. 292 (54 Pac. 216); *Reinstein* v. *Roberts,* 34 Or. 87 (55 Pac. 90, 75 Am. St. Rep. 564); *Mayes* v. *Stephens,* 38 Or. 512 (63 Pac. 760, 64 Pac. 319).

It is argued that Buells having secured, on account of the hops, the loan of some money from plaintiff's agent, which his principal ratified, made the loan that of Backhaus, thereby entitling him to the possession of the hops upon Buells' failure to repay or tender the money prior to October 30, 1902. T. E. Blakely, who, acting for plaintiff, secured the contract in question, appearing as his witness, testified in relation to a part of said loan as follows: "Well, I think it was on the 7th day of April I met Mr. Buells on the sidewalk. He says: 'Can you let me have a little money on my hops?' I told him that Mr. Backhaus had not made any arrangements with me about advancing any money on the hops, and he says to me: 'You will be perfectly safe. You will have the hops in your hands, and I need a little money pretty bad.' 'How much do you need?' I said to him, and he said, '$8.' Then I told him I would let him have it, and done so. That is about all the conversation we had in regard to money matters, but the hops were talked about there at the same time." "Ratification," says Mr. Clark in his work on Contracts (section 303), "is where a person adopts a contract made on his behalf by another without authority, and it is governed by the following rules: (*a*) The agent must have contracted as agent, and not on his own account." An examination of Blakely's testimony shows that he did not loan the money as agent, but on his own account; and consequently the transaction could not be ratified by the plaintiff, not being made in his behalf. A valid chattel mortgage may be given to secure future advances (*Hendrix* v. *Gore*, 8 Or. 406; *Nicklin* v. *Betts Spring Co.* 11 Or. 406 5 Pac. 51, 50 Am. Rep. 477; *Sabin* v. *Columbia Fuel Co.* 25 Or. 15, 34 Pac. 692, 42 Am. St. Rep. 756); but if none are made thereunder, no lien attaches to the property described therein: *Coffin* v. *Taylor*, 16 Or. 375 (18 Pac. 638). The contract having been entered into to secure future advances to be made by Back-

haus, he could not take an assignment of any debts that Buells owed, and tack them to his mortgage, so as to make them a lien upon the property, without some stipulation to that effect: *Barthell* v. *Syverson*, 54 Iowa 160 (6 N. W. 178). And hence the plaintiff was not entitled to the possession of the hops by reason of Buells' failure to pay or tender the money so loaned by Blakely.

4. It is maintained by plaintiff's counsel that, Buells having mortgaged the hops as security for the faithful performance of his part of the contract, for a breach thereof plaintiff was entitled to the possession of the property, and, this being so, the court erred in giving the instruction complained of. "To constitute a mortgage," says Mr. Jones in his work on Mortgages (4 ed.), § 70, "there must necessarily be a debt which is the subject of the security." Such consideration may consist of an antecedent or a present obligation, future advances, indemnity against liability incurred, stipulations for the support and maintenance of a person, or agreements for the performance of any other duty. A covenant in a deed providing for the support of a person or for the performance of a duty, the damages for the breach of which are unliquidated, was originally regarded as not strictly constituting a mortgage, but the more recent cases are to the effect that a conveyance conditioned for the performance of a contract is a mortgage : Jones, Mortgages (4 ed.), § 388. To reach such a conclusion, however, it must necessarily follow that the duty to be performed, the damages for a breach of which are unliquidated, is capable of being reduced to a money value, either by an agreement of the parties, or by some appropriate judicial proceeding; thus constituting a debt, the payment of which is, in effect, secured. Applying this interpretation to the contract under consideration, it is susceptible of being construed as two instruments — the first, constituting an executory agreement for the sale of hops;

and the second, their hypothecation as security for any damages that Backhaus might sustain by reason of. Buells' failure or refusal to keep or perform his part of the agreement. To disregard the debt as a consideration for the mortgage, and to hold that the security was given for the faithful performance of Buells' part of the executory agreement, would be to answer in the affirmative an inquiry propounded by Mr. Justice COOLEY, concerning a mortgagee of personal property, in *Fowler* v. *Hoffman*, 31 Mich. 215, in which he asks: "Is he to be his own judge, as well as officer; first assessing his own damages, and then seizing and selling the property to satisfy them?" In that case, which was also an action of replevin, the plaintiff sought to recover possession of the presses and material of a newspaper, in consequence of the breach of a clause in a chattel mortgage which provided that he was to have the full and free use of one half column of said paper during the term of five years for advertising purposes and for the publication of reading matter, and also because of the breach of another provision of the instrument which was to the effect that the mortgagors would not use the columns of the paper, or permit them to be used, to publish matter detrimental to the plaintiff, his reputation or business. It was held that the latter clause was too vague, uncertain, and indefinite to constitute the basis of a mortgage lien enforceable by power of sale.

In the case at bar, if Buells did not raise the prescribed quantity of hops, or if they were not of the specified quality, or if they were not picked, dried or baled in the manner indicated, and Backhaus, in consequence thereof, is to be the sole judge in his own case of the penalty he would demand for a violation of the terms of the executory agreement, the measure of his exaction might be difficult of ascertainment until he had manifested it by settling with Buells. If Backhaus is to exercise a right to take the hops

on account of the refusal to deliver them, he could also secure the possession thereof because of a breach of the conditions adverted to, for, if the security extends to one clause of the executory agreement, it necessarily goes to each. If Buells failed to raise 10,000 pounds of hops of the specified quality, or neglected to pick, dry, or bale them, or refused to deliver them as he had agreed, Backhaus was entitled to recover from him the damages he had sustained, which would be the difference between the market value on October 30, 1902, of 10,000 pounds of hops of the character and quality specified, and the price agreed to be paid therefor; but, as this sum had not been liquidated, the debt which was the consideration for this part of the security could not be ascertained, except by some judicial proceeding instituted for that purpose. It is true that plaintiff, in any event, was entitled to nominal damages; but this term is so indefinite, and the measure of this kind of damages depends upon so many elements, that it would be improper to permit him to be the judge of the sum to which he was entitled as such, or to take possession of the property to satisfy the same. Contracts of the character under consideration ought to be enforced, if possible; but as plaintiff had not reduced his damages to a matter of money value, so as to form a debt as a consideration for the security, he was not entitled to the possession of the property, for he could only take it for the purpose of selling it in the manner prescribed by law to satisfy his demand: B. & C. Comp. § 5637.

The execution of a chattel mortgage, though in the nature of a sale upon condition, creates a mere lien upon the property hypothecated to secure the payment of a debt or the performance of some duty: *Chapman* v. *State*, 5 Or. 432; *Knowles* v. *Herbert*, 11 Or. 54, 240 (4 Pac. 126); *Keel* v. *Levy*, 19 Or. 450 (24 Pac. 253). As a corollary from the legal principle thus announced, it follows that the mortgagor

retains such a title to the property mortgaged that he may sell or further incumber it: *Jacobs* v. *McCalley*, 8 Or. 124; *Commercial Nat. Bank* v. *Davidson*, 18 Or. 57 (22 Pac. 517); *Sommer* v. *Island Merc. Co.* 24 Or. 214 (33 Pac. 559). After condition broken, however, the lien of the mortgagee of chattels is converted into a qualified ownership of the mortgaged property, which entitles him to the possession thereof, and enables him, in case his right thereto is denied, to maintain an action therefor: B. & C. Comp. § 5636; *Case Threshing Mach. Co.* v. *Campbell*, 14 Or. 460 (13 Pac. 324); *Marquam* v. *Sengfelder*, 24 Or. 2 (32 Pac. 676); *Reinstein* v. *Roberts*, 34 Or. 87 (55 Pac. 90, 75 Am. St. Rep. 564); *Mayes* v. *Stephens*, 38 Or. 512 (63 Pac. 760, 64 Pac. 319). When the mortgagee of chattels, after condition broken, secures possession of the mortgaged property by legal process, the mortgagor's title thereto is not extinguished, but continues until the lien is foreclosed and he is divested of such title in the manner prescribed by law. We think the rule deducible from a construction of our statute in the light of the decisions of this court upon the subject may be fairly stated as follows: The right given to a mortgagee of chattels, under Section 5636, B. & C. Comp., to recover the possession of the mortgaged property after condition broken, is intended to enable him to secure such possession for the purpose of foreclosure only; and unless there is some debt, ascertained or declared, so that the foreclosure can be had, the remedy cannot be invoked. If the obligation is unliquidated, the mortgagee must resort to some appropriate judicial proceeding to enforce his lien, in which the amount of his debt can be ascertained, and the rights of the parties declared and enforced.

5. In *Case Threshing Mach. Co.* v. *Campbell*, 14 Or. 460 (13 Pac. 324), it is intimated that the mortgagee of chattels, having secured their possession, might hold them until

the mortgagor redeems or in some other manner discharges his obligation, for Mr. Justice THAYER, in speaking of the mortgagee and of his right to the mortgaged property, says : " He may obtain control over it as a matter of right, and hold it as against every one until the mortgagor performs the conditions of the mortgage." If the language quoted was intended to mean that a mortgagee of chattels is under no legal obligation to foreclose his mortgage, and that the mortgagor, to free his property from the lien thereof, must take the initiative, we cannot yield our consent thereto, for the question was not involved in that case ; and, though the excerpt is a fair statement of the rule that prevails in most of the other states, it is not, in our opinion, warranted by our statute, or borne out by the decisions of this court. Whatever the rule may be in other states of the Union, it is settled in this state that, if the mortgagee of chattels takes possession of the mortgaged property after condition broken, he cannot be permitted to keep, treat, or dispose of it as his own. The mortgage at its inception creates only a lien upon the property affected thereby, and the contract is not, in the strict sense of the term, a sale upon condition : *Woodside* v. *Adams*, 40 N. J. Law, 417. The legal claim which he asserts upon the mortgagor's default is the lien, coupled with the right to the immediate possession of the property ; but, the mortgagee being a trustee of the mortgagor, the union of such lien and right can never ripen into a title until the lien has been foreclosed in the manner prescribed by law. If the mortgagor, with the consent of the mortgagee, retains possession of the chattels mortgaged after condition broken, he can recover their full value against an officer seizing them as the property of a third person : *Luse* v. *Jones*, 39 N. J. Law, 707. When the mortgagee secures possession of mortgaged chattels, it is for the purpose of satisfying his debt, upon the discharge of which his right to the property ceases : *Freeman* v. *Free-*

*man,* 17 N. J. Eq. 44. If, after taking possession of mortgaged chattels, he sells a part of them for a sufficient sum to pay his debt and expenses, his claim to the remainder of the property is extinguished ; and, if he afterwards makes a further sale thereof, he will be liable to the mortgagor therefor : *Charter* v. *Stevens,* 3 Denio, 33 (45 Am. Dec. 444). The plaintiff's mortgage never having been foreclosed, he had no adequate title to the hops subject to his lien, and hence no error was committed in directing the jury to return a verdict for Buells.

6. It is also insisted that the court erred in refusing to permit the plaintiff to introduce testimony to prove that within the time prescribed he tendered to Buells the sum of $500, under the terms of the contract, for the purpose of harvesting his hops. The testimony sought to be introduced was directed to an issue not involved, and hence the testimony was immaterial, for, if plaintiff was entitled to recover the possession of the hops, it was upon the theory that the security, which is in the nature of a chattel mortgage, conferred such right upon a breach of the conditions thereof ; but he could not, in any view of the case, secure such possession under an executory agreement.

Other errors are assigned, but, deeming them unimportant, the judgment is affirmed.                AFFIRMED.

Decided 26 October, 1903.