Argued January 10, decided January 16, rehearing denied February 6, 1912.

# McNEFF v. SOUTHERN PAC. CO.

[120 Pac. 6.]

CHATTEL MORTGAGES—BREACH OF CONDITION—REPLEVIN BY MORTGAGEE.

1. A hop grower contracted to sell her crop at a specified rate per pound, and gave a chattel mortgage on the crop to secure any advances by the purchaser under the contract, and any damage to him by breach of the contract by the grower. The mortgage provided that it should be foreclosed in the manner provided by law. Section 422, L. O. L., provides that a mortgage lien shall be foreclosed, and the property adjudged to be sold to satisfy the debt secured by a suit. Section 7411 provides that on breach of the conditions of a chattel mortgage it may be foreclosed in the manner therein provided and not otherwise. Section 7410 provides that on breach of the condition of a chattel mortgage, the mortgagee shall be entitled to the immediate possession, and if the possession is not delivered on demand, he may recover possession as provided by Code Civ. Proc. tit. 4, c. 2 (Sections 283-294, L. O. L.), which chapter relates to the recovery of possession of personal property, and provides that during pendency of the action the property may be delivered to plaintiff upon a writ, commonly known as the writ of replevin. *Held*, that, on breach of the contract with the hop grower, the purchaser could maintain replevin to recover the hops, although he might have brought suit to foreclose the mortgage, making parties defendant of all who claimed to have any interest in the hops.

CHATTEL MORTGAGES—REPLEVIN—FORM OF JUDGMENT.

2. Section 198, L. O. L., provides that in an action to recover possession of personal property, judgment for plaintiffs may be given for the possession or the value thereof, in case a delivery cannot be had, and damages for the detention thereof. *Held* that, where a mortgagee brings replevin to recover possession of mortgaged hops because of condition broken by the mortgagor, he can recover the property, or in case recovery cannot be had, he is entitled to judgment for the value of his property, which value is measured by the amount which would make him whole for what he has suffered by the breach of the conditions of mortgage.

CHATTEL MORTGAGES—VALIDITY—MORTGAGE TO SECURE PAYMENT OF DAMAGES. ·

3. A mortgage on a crop of hops given by the grower to the purchaser, who has agreed to make advances on the crop, to secure the payment of the advances and damages which would result from a breach of the contract by the grower, is valid.

CHATTEL MORTGAGES—CONSTRUCTION—AMOUNT SECURED.

4. A hop grower sold her crop and gave a mortgage thereon to the purchaser to secure advances and damages which might result from the grower's breach of contract. *Held*, on breach of the contract by the grower by sale of the hops to another person, that the amount secured by the mortgage consisted of the unpaid advances and the difference between the market value of the hops and the contract price.

From Multnomah:   EARL C. BRONAUGH, Judge.

Statement by MR. JUSTICE BURNETT.

This is an action by J. McNeff, T. L. McNeff and J. W. McNeff, partners as McNeff Brothers, against the Southern Pacific Company, a corporation, and J. McGillivray.

The plaintiffs seek to recover from the defendants the immediate possession of 53 bales of hops alleged to be of the reasonable value of $2,800. The action was dismissed as to the Southern Pacific Company. The defendant J. McGillivray answered admitting that the hops were in his possession in Multnomah County, Oregon, that the plaintiffs demanded them of the defendants, and that the defendants refused delivery, but otherwise denied all the allegations of the complaint. On the issues thus formed the action was tried by the court without a jury. It appears in substance from the findings of fact made by the court that Mrs. C. H. Bozarth, a hop grower in Yamhill County, entered into a Janus-faced contract, common in the hop-growing industry, which in one aspect amounted to an executory contract for the sale of her hops to the plaintiffs at the price of $10\frac{3}{4}$ cents per pound, and in the other aspect was a chattel mortgage as security for the advances which the plaintiff might make to the grower, under the provisions of the contract, and for any damage which the buyer might sustain by reason of the default or breach of the grower in the performance of the contract. The entire contract is set forth in the findings of fact and its chattel mortgage feature reads thus:

"Whereas, the said buyer herein agrees to make certain advances to the said seller, under the terms of this contract, relying upon the faithful performance of the covenants and agreements of the said seller herein contained, the said seller as security for the faithful performance of this contract on her part and as security for advances which the said buyer may make to the said

seller under the provisions hereof, and for any damage which the said buyer may sustain by reason of the default or breach of the said seller in the performance thereof, does hereby bargain, sell, pledge and mortgage to the said buyer the entire crop of hops to be raised upon the premises above described in the year 1909, and does authorize and empower the said buyer upon such default or breach to foreclose this contract as a mortgage in the manner provided by law for the foreclosure of mortgages of personal property, and in the event of such default or breach hereby agrees to pay to the said buyer the said sums so advanced and interest thereon as aforesaid, and the damages which shall be sustained by the said buyer to be ascertained as above provided, and in addition thereto a reasonable sum to be fixed by the court, should suit be brought to foreclose this mortgage, as attorney's fees for instituting suit."

The instrument was recorded as a chattel mortgage, and the court finds that the plaintiffs advanced to the grower, during the progress of the crop season, the sum of $737.10, and that she has not repaid the same. She raised upon the premises described in the hop contract 10,300 pounds of hops, put up in 53 bales, but she refused to deliver same to plaintiffs, and transferred them to one Abrams who later sold them to the defendant McGillivray. He retained them in Multnomah County until they were taken by the sheriff under the writ of replevin in this action. He then executed a redelivery bond and took the hops from the sheriff and sold them about November 11, 1909. The court finds that the plaintiffs performed their part of the contract in every respect, and tendered to the grower in lawful money of the United States the balance due her upon the purchase price at 10¾ cents per pound but she declined to accept the tender and refused to deliver the hops. He determined that the hops were of the reasonable value of 25 cents per pound, or in the aggregate the sum of $2,517.50, and that the defendant McGillivray had actual personal notice and

knowledge of the hop contract and chattel mortgage and of the plaintiffs' right thereunder at and prior to the time he acquired possession of the hops. The court rendered judgment to the effect that the plaintiffs at and prior to the commencement of the action were and now are the owners and entitled to the immediate possession of the hops mentioned and described in the complaint, the same being of the value of $2,517.50; but, inasmuch as it appeared that the defendant had disposed of the hops and could not now deliver possession of the same to plaintiffs, the judgment was entered against the defendant in favor of the plaintiffs for the full sum of $2,517.50 together with costs and disbursements. The defendant appeals from this judgment.

REVERSED.

For appellants there was a brief with an oral argument by *Mr. Samuel B. Huston.*

For respondents there was a brief over the names of *Mr. Arthur C. Emmons* and *Mr. John A. Carson* with an oral argument by *Mr. Carson.*

MR. JUSTICE BURNETT delivered the opinion of the court.

It is agreed by the parties that the question here is whether the judgment was the proper conclusion to be reached from the findings of fact as reported by the court.

1. The contention of the defendant is that the mortgagee cannot maintain replevin for mortgaged chattels where his damages are unliquidated; that the damages had not been ascertained at the time the action was commenced, and that in order to allow the plaintiffs to recover in this action their damages must have been previously ascertained in some other proceeding. In support of this contention the defendants cite two authorities: Jones, Chattel Mortgages, § 93, and *Backhaus* v. *Buells*, 43 Or. 558 (72 Pac. 976; 73 Pac. 342.) This citation from Jones on Mortgages reads thus:

"A condition in a power of sale mortgage must be one for the breach of which the damages are liquidated. The mortgagee in such a mortgage takes the law into his own hands in executing the power of sale, and if damages are unliquidated he cannot sell the property upon a breach because he will not be allowed to be his own judge and assess his own damages and then sell the property to satisfy them."

This citation does not apply to the case in hand, for the mortgage here is not one giving the mortgagee the direct power to sell. On the contrary the express stipulation of the mortgage clause of the contract under consideration is that it is to be foreclosed in the manner provided by law. Section 422, L. O. L., provides, "a lien upon real or personal property other than that of a judgment or decree, whether created by mortgage or otherwise, shall be foreclosed and the property adjudged to be sold to satisfy the debt secured thereby by a suit."

Section 7411, L. O. L., reads thus:

"Whenever in any mortgage of any goods and chattels the parties to such mortgage shall have provided the manner in which said mortgage is to be foreclosed, such mortgage, upon breach of the conditions thereof, may be foreclosed in the manner therein provided and not otherwise; and if in any such mortgage the manner in which the same may be foreclosed shall not be provided then upon breach of the conditions thereof, in case the consideration of such mortgage shall not exceed the sum of $500, the same may be foreclosed and the mortgaged property sold by the sheriff or any constable in the county in which said mortgage has been filed, upon the written request of the mortgagee, his agent, or attorney, upon such notice, and in the manner provided by law for the sale of personal property upon execution; and if the consideration of such mortgage shall exceed the sum of $500, the same may be foreclosed by an action at law in the circuit court of the county in which such mortgage may have been filed."

Section 7410, L. O. L., says:

"Whenever the condition of any mortgage of goods and chattels shall be broken, the mortgagee shall be entitled

to the immediate possession of the mortgaged property, and when, after breach of the condition of any mortgage the possession of the mortgaged property shall not be delivered up to the mortgagee upon demand by him or by any person duly authorized by him to make such demand of the person or persons having such mortgaged property in possession, the mortgagee may recover the possession of such mortgaged property in the manner provided by chapter 2 of title 4 of the Code of Civil Procedure."

Chapter 2 of title 4 relates to the recovery of possession of personal property, and provides that during the pendency of the action the property may be delivered to the plaintiff upon a writ commonly known as the writ of replevin upon his furnishing proper security.

The early case of *Jacobs* v. *McCalley*, 8 Or. 124, holds that the parties have a right to prescribe the manner in which a foreclosure of a chattel mortgage may be accomplished. If, in that process as stipulated, it was necessary for the possession of the mortgaged property to be delivered to the mortgagee, the mortgagor must comply with that condition if he would insist on it being foreclosed in the manner prescribed by its own terms. This court held there, "on his refusal to give up the property the mortgagee might have brought replevin against the mortgagor which action the mortgagor could have defended by showing that the property had been in some manner released from the mortgage." The court also held in that case that a mortgagee was not driven to his action by replevin, but could at once begin his suit in equity to foreclose the chattel mortgage. Under the terms of Section 7410, L. O. L., above quoted, it has been often held that a mortgagee may maintain replevin for the mortgaged property upon a breach of the conditions of the mortgage by the mortgagor. In the case of *Reinstein* v. *Roberts*, 34 Or. 87 (55 Pac. 90: 75 Am. St. Rep. 564), which has been followed in many other cases since

then, it was held that a mortgagee might maintain replevin in the usual form, alleging absolute ownership of the property in himself and prove that allegation by the production of a chattel mortgage upon the property in question coupled with testimony *aliunde* that the mortgagor has committed a breach of the conditions of the chattel mortgage. This doctrine is also reiterated in the case of *Backhaus* v. *Buells,* 43 Or. 558 (72 Pac. 976: 73 Pac. 342). After discussion of the authorities the court laid down the rule as follows:

"The right given to a mortgagee of chattels under Section 5636, B. & C. Comp. (Section 7410, L. O. L.), to recover the possession of mortgaged property after condition broken, is intended to enable him. to secure such possession for the purpose of foreclosure only and unless there is some debt ascertained or declared so that the foreclosure can be had the remedy cannot be invoked. If the obligation is unliquidated the mortgagee must resort to some appropriate judicial proceeding to enforce his lien in which the amount of his debt can be ascertained and the rights of the parties be declared and enforced."

In that case the contract between Backhaus, the buyer, and Buells, the grower, was almost identical in terms with the contract in question here. When the time for delivery arrived Buells refused to deliver the hops, and Backhaus brought his action of replevin in the usual form claiming absolute ownership of the property in himself. He secured a writ of replevin, and, having obtained possession of the hops by reason thereof, immediately shipped them out of the State without resorting to any proceeding in equity or otherwise to ascertain judicially the amount of his damages or to effect a foreclosure. He thus, in a sense, abused the process of the court, and it amounted in a manner to a conversion of the property of the grower. It has been many times held by this court, culminating in the case of

*Swank* v. *Elwert,* 55 Or. 487 (105 Pac. 902), that until condition broken the mortgagee has no property in the goods mortgaged; but when condition is broken he has more than a mere lien. He has a qualified property authorizing him to obtain possession of the goods mortgaged, but the title of the mortgagor is not yet concluded thereby. The latter also has a property in the goods which cannot be finally extinguished until the lien has been properly foreclosed in a manner provided by law. A mortgagee cannot of his own force and power, even when a breach has been committed by a mortgagor, take the property and proceed to sell the same for his alleged damages and advances because he cannot act as judge of his own case and executioner at the same time. The reason of the rule is satisfied, however, when he makes complaint in replevin and produces proof of the mortgage and of the breach and of his advances, and submits to a jury the question of fact as to whether he has been damaged or has not been reimbursed for his advances. The verdict and consequent judgment thus liquidate his damages and authorize him to recover possession of the property. This is in harmony with the rule laid down in *Backhaus* v. *Buells.* It is true, under the doctrine of *Jacobs* v. *McCalley,* 8 Or. 124, the plaintiffs might have brought suit to foreclose the chattel mortgage and made parties defendant of all who claimed to have any interest in the same and they then could not have complained of such a proceeding unless they had delivered the property into the hands of the plaintiffs for foreclosure, but direct foreclosure without obtaining possession under Section 7410, L. O. L., is not exclusive as a remedy.

Having shown, as disclosed by the findings of fact, a breach of the terms of the chattel mortgage by the mortgagor, the plaintiffs here are entitled to recover the possession of the hops.

2. It remains to determine the form of the judgment

and the amount of the alternative judgment. The requirements of a judgment in an action of this kind are thus outlined in Section 198, L. O. L.:

"In an action to recover the possession of personal property judgment for the plaintiffs may be given for the possession or the value thereof in case a delivery cannot be had, and damages for the detention thereof. If the property has been delivered to the plaintiff and the defendant claim the return thereof judgment for the defendant may be for a return of the property or the value thereof, in case a return cannot be had, and damages for taking and withholding the same."

It is by virtue of Section 7410, L. O. L., that the mortgagee is entitled to the possession of the mortgaged property over the mortgagor who also has a property in the same goods. It is only because of conditions broken that the mortgagee has any property in the goods. He can only recover his own property, or in case recovery cannot be had he is entitled to only the judgment for the value of his property. This value is measured by the amount which would make him whole for what he has suffered by the breach of the conditions of the mortgage.

It was conceded at the argument and is well supported by authority that a chattel mortgage may be given to secure the repayment of future advances.

3. It remains to consider whether the chattel mortgage can be given to secure the payment of such damages as may be suffered by the mortgagee by the failure of the mortgagor to perform the terms of the executory contract for the sale of the property in question. In other words, are damages resulting from the mortgagor's violation of the contract to be considered in estimating the value of the plaintiff's property in the chattels? Opposing the validity of such a mortgage, the defendant cites the case of *Lillenthal* v. *McCormick*, 117 Fed. 89 (54 C. C. A. 475). There a hop contract, much like the one in hand, was involved. The condition of the instrument was that the

same "shall be a chattel mortgage on the entire crop of hops raised on the above-described land to secure the payment of all said sums advanced and interest, and the performance of all the provisions hereof." The court held that this language was too indefinite to give a lien for damages recovered for the breach of the contract for the sale of the hops. It said:

"There was no sum mentioned for any damages that might otherwise arise. No lien could be given unless the language to that effect was clear, definite, and certain. As the instrument reads in its entirety it does not give a lien for any damages. Every instrument, contract, conveyance or mortgage must of course be construed with reference to the provisions thereof so as to carry out the true intent and meaning of the parties."

That case is distinguishable from the one in hand by the fact that here the mortgage is given not only as security for the faithful performance of the contract on the part of the mortgagor, but also "as security for advances which the said buyer may make to the said seller under the provisions hereof, and for any damage which said buyer may sustain by reason of the default or the breach of said seller in the performance thereof."

In the case of *Crane* v. *Deming*, 7 Conn. 387, the court upheld a mortgage given to secure the performance of a contract to build a bridge without any specific sum being named as a penalty for failure. It is of frequent occurrence that mortgages are given to secure the performance of a contract for the maintenance and keeping of the mortgagee. *Cook* v. *Bartholomew*, 60 Conn. 24 (22 Atl. 444: 13 L. R. A. 452) ; *Bachmeier* v. *Bachmeier*, 69 Minn. 472 (72 N. W. 710) ; *Coleman* v. *Whitney*, 62 Vt. 123 (20 Atl. 322: 9 L. R. A. 517). In *Patton* v. *Nixon*, 33 Or. 159 (52 Pac. 1048), this court held that equity will grant relief to one who has made a conveyance of property in consideration of her future support, although the plaintiff

had a remedy at law, and to avoid a multiplicity of actions will make the maintenance of the plaintiff a charge upon the premises.

In the class of contracts mentioned in the cases last above noted, the person for the benefit of whom the contract was made could have maintained an action at law to recover damages for the breach of the contract by the other party. If, as declared by this court in *Patton* v. *Nixon,* the court of equity could impose a charge upon the real property in question to secure the performance of the provisions of the contract for which an action for damages would lie, it follows by analogy that parties may contract in advance to secure the performance of such a contract by a mortgage upon the property. In good reason it makes no difference whether the mortgage was given upon real or personal property. In either case it is a security. We conclude then, that it is competent for parties to make a chattel mortgage to secure the payment of damages which may be occasioned by the breach of a contract for the sale of property in question.

4. As we have already seen, it is competent for the mortgagee to maintain his action of replevin to recover the possession of the property upon a breach of the conditions in a mortgage on the part of the mortgagor. To establish his allegation of ownership, a part of his proof is necessarily the establishment of the breach. As showing this breach he is entitled to prove that certain advances made by him have not been repaid. In good reason he may also show that he has been damaged by reason of the failure of the mortgagor to perform his agreement for the sale of the property, for the default of the mortgagor in this respect is under the terms of the mortgage in question here as much a breach as the failure to repay the advances. Not only so, but he is entitled to prove both these elements of unpaid advances and damages as the measure of the plaintiffs' judgment

for the value of his property in the goods in question, for in any event, if he had been repaid his advances and such damages as accrued to him by reason of the failure of the mortgagor to comply with the terms of the contract of sale, the mortgagee would have no further property in the hops.

The unpaid advances as the court found amounted to $727.10 and this must be counted as one element of the alternative judgment for the value of plaintiffs' property in the hops. The additional element of damages to which the plaintiff would be entitled is measured by the difference between the contract price of $10\frac{3}{4}$ cents per pound and the greater market value of 25 cents per pound at the time of delivery. This difference is $14\frac{1}{4}$ cents per pound. As found by the court, the gross weight of the hops was 10,300 pounds, contained in 53 bales. The contract also provided that 5 pounds tare per bale should be deducted, amounting to 265 ponds, leaving the net weight of the hops 10,035 pounds. The damages then would be calculated upon this number of pounds at $14\frac{1}{4}$ cents per pound, amounting to $1,429.98 which added to the $737.10 advances makes a sum total of $2,167.08 which is the measure of the value of the plaintiffs' property in the hops in question and the measure of the alternative judgment to be rendered for him in case delivery cannot be had. The court rendered an absolute judgment against the defendant for the sum of $2,517.50. This was error, not only because it failed to render an alternative judgment allowing a return of the property, if a return could be had, but also because it was in excess of the value of the plaintiffs' property in the hops. For these reasons the judgment of the court is reversed and the cause remanded for new trial.        REVERSED.