[File No. 6147.]

JOSEPH HEDRICK, Administrator of the Estate of Fred F. Butler, Deceased, Respondent, v. STOCKGROWERS CREDIT CORPORATION, a Corporation, and J. E. PHELAN, Appellants.

(250 N. W. 539.)

Opinion filed October 10, 1933.

*W. C. Crawford* and *Byrne & Reichert,* for appellants.

*G. H. Starke,* for respondent.

BIRDZELL, Ch. J.  This is an action for conversion of livestock and ranch equipment.  The plaintiff had judgment in the court below and the defendants appeal.

The following are the essential facts:  Fred F. Butler, prior to his death on June 16, 1931, was engaged in ranching in Slope county, North Dakota.  At that time there were upon the ranch approximately 2,600 sheep, including the lambs, some 50 head of cattle, including

yearlings and calves, 10 horses, a quantity of feed, some farming machinery, and ranch equipment. This property had been mortgaged to the defendant Stockgrowers Credit Corporation to secure two notes dated May 13, 1931, and payable November 18, 1931, one for $11,500 and the other for $3,000. A day or two prior to Butler's death, shearing operations for that season had been completed and about 14,000 pounds of wool had been obtained. Butler's widow and children continued to live upon the ranch until the 18th day of August, 1931, when they moved to Spearfish, South Dakota. Meanwhile Mrs. Butler had spent some two weeks in a hospital where she had given birth to a child, and the defendants, through hired men, had participated in the operation of the ranch.

The Stockgrowers Credit Corporation is a closed corporation. Its stock is owned by the defendant J. E. Phelan, president, and members of his family. After Butler's death Phelan manifested an interest in the conduct of the ranch and sent men there to look after the property or to take charge of the ranch—which, is a matter of controversy between the parties. There were some conferences between Phelan and Mrs. Butler, apparently looking toward some adjustment of the situation. The testimony is conflicting with references to what was said or agreed upon at such conferences. Phelan claimed that Mrs. Butler, realizing the large indebtedness against the property and the difficulties and drudgery connected with the operation of the ranch, desired to leave, and voluntarily did so with his assistance. Mrs. Butler, on the other hand, contended that she was told that the property was mortgaged for more than it was worth; that there was nothing there for her and that it would be necessary for her to leave as soon as possible after the baby's birth.

The wool crop was consigned to Rand & Company in Boston, where it was disposed of for the account of the Stockgrowers Credit Corporation, the net amount of $2,048.01 being realized. Pursuant to notice, dated September 28, 1931, the ranch property was disposed of at chattel mortgage foreclosure sale. The report of sale shows that it was held on the Butler ranch on the 10th day of October, 1931, and that the property, other than the wool, was bid in by the Stockgrowers Credit Corporation for the amount of $12,970.75. In November the plaintiff was appointed administrator of the estate of Fred F. Butler and

promptly brought this action against the defendants seeking damages for conversion. At the conclusion of the trial the jury rendered a verdict in favor of the plaintiff for $5,200, with interest at 6 per cent from the 10th day of October, 1931, upon which judgment was entered.

After a careful examination of the record we are convinced that a new trial must be had on account of the unsatisfactory character of the evidence relating to the value of the property converted and of errors in admitting the same. We shall briefly comment upon this condition and mention only such of the remaining contentions of the appellant as present questions likely to arise upon a retrial. It will be seen that Mrs. Butler was permitted to testify to the value of practically everything on the ranch upon no foundation of knowledge other than such familiarity with the operation of the ranch as she would naturally acquire in her situation as the wife of the owner. This is not to suggest, of course, that a wife taking an intelligent interest in affairs that concern the family will not gain considerable knowledge of the value of property acquired by her husband upon which the prosperity of the family depends. But it does not follow from this that such general knowledge is a sufficient foundation upon which to base opinion evidence. It would scarcely be contended that the foundation laid for Mrs. Butler's testimony concerning the value of the sheep and the horses, as well as a number of items of machinery and equipment, would have qualified her to give opinion evidence of value if her neighbor's property were concerned. Yet the foundation should be substantially the same in either case.

The record shows, as is usual in such cases, a rather wide range of testimony, particularly concerning the value of the livestock. Even a small difference in the value per head, affecting over 2,600 head of sheep and lambs, would make a very substantial difference in the verdict and judgment. The record shows that the trial court excluded, on account of insufficient foundation, the proffered testimony as to values of a disinterested witness for the plaintiff, Follis Sáyre, who was familiar with this particular band of sheep, who had worked for Butler upon the ranch, who had formerly had an interest in some of the Butler sheep and who had sold sheep, while admitting the testimony of Mrs. Butler upon a less satisfactory foundation. This is not to suggest that the Sayre testimony was not properly excluded upon the

foundation laid, but merely to call attention to the superior foundation. It is to be borne in mind that Mrs. Butler does not profess to have been the owner of these sheep or the other property, and that this action is brought by the administrator of the Butler estate. Her testimony, therefore, is not admissible under the liberal rule that enables owners to testify to the value of their property. The verdict shows that the jury must have attached great weight to the opinion evidence of Mrs. Butler as to the value. The following extract from her testimony will show the character of the foundation laid and the extent to which on that foundation she was permitted to give opinion evidence as to values.

She testified that she was familiar with the ranch, knew the character and condition of the stock and that on July 1, 1931, she made out a shearer's tally showing 1,585 head of sheep. This was after her husband died. There were 1,056 lambs, and 52 head of cattle. The cattle were breeding stock. There were 19 or 20 cows, 4 or 5 years of age, some younger. They were in good condition and would perhaps run 1,100 pounds. She could not estimate the weight of the yearlings. There were 5 two-year old steers, and approximately 15 yearlings and 13 calves. They got market reports at the ranch every two weeks, which she watched. She heard of sales from time to time of horses, cattle and sheep. She had been sufficiently long upon the ranch to be able to judge something of the value of the horses, cattle and sheep. When asked as to the value of the cows on July 1, 1931, she answered, "If those had been my cattle, absolutely I wouldn't have sold any of them for less than $50 a head." The answer was stricken out as not responsive. The question was again read and she was asked, "And could you tell the jury what the value of those 19 or 20 head of cows was, the reasonable cash value at your place on July 1, 1932? Answer. $50. Question. You mean $50 a round? A. A round, on the average. Q. And the yearlings and long yearlings, taking them together, what in your opinion were they worth? A. $45 on the average. Q. And the calves, in your opinion what were they worth? A. From $15 to $20. . . . Q. Can you tell the jury what the reasonable cash value of those 1,500 breeding ewes was? A. Six dollars. (The answer was stricken out on motion of the defendants' attorney as not responsive.) She then answered, "Yes, I do. Question. What was the reasonable cash value in your opinion? Defendants' attorney: Object to that on

the ground there is no proper foundation laid for the opinion. The Court: Overruled. Answer. Six dollars. Q. Do you know of any sales of breeding ewes which were made in that neighborhood that spring, Mrs. Butler? A. I cannot definitely recall, only hearing my husband speak of the values and sales and so on, but personally I couldn't just cite any instances just now. Q. To refresh your memory about a sale that was made at Tobar's? Defendants' attorney: Objected to on the ground it is incompetent, irrelevant and immaterial, not any basis to form an opinion. The Court: Overruled. If she knows she may state. Defendants' attorney: On the further ground it is leading and suggestive. The Court: I suppose it is, calling her attention to a specific event. The witness: There was a sale of Tobar's sheep, but the exact amount I cannot recall. Q. Do you know what the reasonable cash value was of the 1,056 lambs at your place on July 1st of last year? A. Yes, sir. Q. What was that reasonable cash value? A. Four dollars." Answer stricken to allow an objection. Objection stated "no proper foundation laid for the opinion. She is not a party to the action." The motion to strike was denied.

They had five heavy work horses on the place and a mule. Mrs. Butler testified generally to their age and condition. When asked for an opinion as to their worth on July 1, 1931, objection was made that no proper foundation was laid. The objection was overruled and the witness answered "$75." She testified there were three saddle horses worth $25 a head, four or five head of ranch stock worth $5.00 a head and a four-year old bull worth $200. There were 100 tons of feed, farm machinery, a Fordson tractor, and plows worth $600. She consulted her husband about the purchase and sale of farm machinery. She had bought a cream separator herself, some household things, including groceries. She had discussed prices with her husband. The hay rake was worth $35. (Objection as to foundation was overruled.) Two hay racks were worth $15 apiece; one mower worth $35; two wagons $25 apiece; corn planter $40; two sheep wagons equipped, $150 apiece; 50 sheep panels, $1.00 apiece; 25 tepees at $2.75 each; one dozen feed troughs at $2.00 each; 75 head of poultry at 50 or 60 cents each; stock tank $50; blacksmith outfit $50; cream separator $40; two sets of bobsleds $50; two saddles $40; (a Chrysler-Plymouth automobile—objection sustained as to the value); a gang plow $75; six

sets of work harness $20 a set; drill $74; a mule $25; 36 sacks of wool averaging 300 lbs., between 15 and 14 cents a pound.; 5 pigs $10; one sheep dog $5.00; miscellaneous small items.

Elmer Clark, a cattle rancher in the vicinity of Marmarth and a witness for the plaintiff, testified that he was familiar with the values of horses and cattle in the vicinity of the Butler ranch. Upon such property he placed a lower value than did Mrs. Butler. He testified that cows were worth between $35 and $40; the yearlings between $15 and $20, and at another place $35; the calves $12 or $13; the bull $150; the heavy horses $75; and saddle horses $20. On cross-examination he testified that $30 apiece would be a fair price for the twenty cows.

. A witness for the defendants, Anton T. Anderson, who had been in the business of buying and shipping livestock and was manager of the Livestock Shipping Association for the Farmers Union, testified that the value of sheep depended a lot on their age and that good average ranch sheep running from two to five years old were worth approximately $3 a head, and lambs weighing forty pounds, approximately $1.25, or possibly a little more.

In order to have arrived at the verdict rendered under the instructions given, the jury must have been of the opinion that the property converted was of the value on July 1, 1931, of between $19,000 and $20,000, and this value could not have been reached under the evidence except by crediting the opinion evidence of Mrs. Butler rendered upon what in our opinion is clearly an inadequate or insufficient foundation. It follows that the error in its admission was prejudicial in that it resulted in a verdict which is excessive when viewed in the light of the competent evidence.

Concerning the contention of the appellant that the trial court erred in refusing to permit the defendants to establish advances made by the credit corporation to Fred F. Butler, and in holding that such advances were not a lien against the property, we have carefully examined the record and are of the opinion that in view of the pleadings, as well as in view of the objections made at the trial and offers of proof, no error was committed in the rulings made. Under the pleadings no issue was made as to whether the claimed advances were secured under that provision of the mortgages which makes them secure "also additional ad-

vances not to exceed $ .........., moneys, goods, credits, guaranties, or overdrafts, advanced to me or for me by the within named Mortgagee," and we feel we are not warranted in assuming that different issues will be presented on a new trial; and, consequently, there is no occasion to further consider this question as one likely to arise upon another trial.

It is contended that the court erred in its instruction to the jury to the effect that the defendant was required to foreclose its mortgage within thirty days after the property came into its possession and in failing to instruct that the foreclosure proceedings were regular and were valid and binding upon the parties.

The record clearly presents a question of fact as to whether or not the defendants took possession of the property in July under the insecurity clause of the mortgage or as to whether the property was in effect voluntarily abandoned, so far as it could have been abandoned by Mrs. Butler without the appointment of any administrator of her deceased husband's estate. It shows no attempt to exercise the power of sale under the mortgage until September 28th, the date of the notice, and no sale until October 10th. This was all prior to the appointment of an administrator.

Section 8127, Comp. Laws 1913, being a part of the article governing foreclosure of mortgages upon personal property, provides: "All sales under this article shall be commenced between the hours of twelve o'clock noon and four o'clock in the afternoon of the day specified in the notice within thirty days after the seizure of the property, unless the sale shall be postponed."

In support of their contention that the defendants were not guilty of conversion, though holding the property beyond thirty days, counsel cite authorities which, in our opinion, are not applicable where, as here, the lien theory of mortgages obtains. Where the mortgage is regarded as transferring title subject to defeasance, irregularities in an attempted sale by the mortgagee do not operate to deprive him of his right of possession. 2 Jones, Chat. Mortg. & Conditional Sales (Bowers Ed.) §. 700. But in such states as Michigan, North Dakota and Oregon, indeed now in the majority of the other states, as Jones points out in § 701, where the mortgage does not transfer title to the mortgagee but creates a mere lien as security for the debt, "the mortgagor can be

divested of his title only by foreclosure and sale." And "It is to be noted that many courts in which the theory once was adhered to that the execution of a chattel mortgage served to transfer title to the mortgagee, or that by a breach of condition on the part of the mortgagor the absolute title to the goods became at once vested in the mortgagee, are now aligned upon the side of the lien-theory of chattel mortgages." It is only where the title theory obtains that the failure to sell the property does not make the mortgagee's possession wrongful. 2 Jones, supra, § 702. Under the lien theory the only right the mortgagee gets is his right to proceed under the statute or by action to foreclose his lien, and where the right to sell is based on a statute the provisions of the statute must be followed. 11 C. J. 705; Everett v. Buchanan, 2 Dak. 249, 6 N. W. 439, 8 N. W. 31; Metheny v. Davis, 107 Cal. App. 137, 290 P. 91; Boomer v. Islay, 42 Idaho, 547, 246 P. 966, 47 A.L.R. 578; Backhaus v. Buells, 43 Or. 558, 72 P. 976, 73 P. 342. The record clearly shows that if the property was seized for purposes of foreclosure, the statute governing foreclosure of chattel mortgages was not complied with in this particular instance in that a sale was not had within thirty days after the seizure, as required by § 8127, Comp. Laws 1913. Failure to comply with the statute in this respect renders the foreclosure a nullity, and the exercise of dominion over the property inconsistent with the rights of the estate of the mortgagor amounts to a conversion.

In view of the legal principles governing the substantial rights of the parties, we are of the opinion that there is no merit in the specific contention of the appellants that their act in taking the property under the circumstances shown here did not amount to a "seizure" within § 8127, and that consequently the thirty day limitation is not applicable. Under the evidence this was clearly a question of fact for the jury.

The members of this court are not agreed as to whether the foreclosure sale is invalid by reason of its being conducted upon the ranch instead of at a place designated by the county commissioners; in other words, as to whether the sale could legally be conducted upon the ranch in view of the exception in § 8133, Comp. Laws 1913, applicable to "growing or harvested crops, grain in bulk, lumber, cordwood, buildings, threshing machines, engines, boilers and attachments" and other like articles, and such other property as by reason of its bulk cannot be

conveniently moved. This question will therefore be reserved for decision until it becomes necessary to pass upon it on a record made.

For the reasons stated above, the judgment and order appealed from are reversed and the cause remanded for a new trial.

BURKE, CHRISTIANSON and BURR, JJ., concur.

NUESSLE, J. I concur in the result.