[Filed February 1, 1887.]

## J. I. CASE THRESHING MACHINE CO. *v.* M. B. CAMPBELL.

CHATTEL MORTGAGE—INTEREST OF MORTGAGEE—REPLEVIN OF MORTGAGED PROPERTY—TROVER.—The mortgagee of chattels, after condition broken has more than a lien ; he has a right to the thing, a qualified ownership, and may, if a delivery of it to him on demand is refused, maintain an action to recover the possession ; and an action in the nature of trover will lie at the suit of the mortgagee for a wrongful interference with the property, by which he is deprived of the right of obtaining possession of it. *Chapman* v. *State*, 5 Or. 432, and *Knowles* v. *Herbert*, 11 Or. 240, distinguished.

INSOLVENT ACT—ASSIGNEE—REDEMPTION OF MORTGAGED CHATTELS.—An assignment of mortgaged personal property under the insolvent law of this state, confers upon the assignee the right to receive such property and redeem it, but not to dispose of it contrary to any stipulation of the mortgage.

SUCCESSIVE MORTGAGEES—RIGHTS OF—EVIDENCE—BONA FIDES.—In a controversy between successive mortgagees of the same personal property, where the elder mortgage has not been regularly renewed as prescribed in Misc. Laws, Chap. 6, Sec. 48, the same is not admissible in evidence without an offer to show that the other mortgage was not executed in good faith.

SAME—TROVER BY MORTGAGEE—WHAT MUST SHOW.—In trover by a mortgagee of chattels after condition broken against an assignee of the mortgagor by title subsequent to the mortgage, it is not necessary for the plaintiff to show the amount due on the notes which the mortgage was given to secure. Proof of the facts showing the character and extent of his ownership, and the wrongful conversion, are sufficient.

UNION COUNTY.    Defendant appeals.    Affirmed.

*James H. Slater*, for Appellant.

To maintain trover, plaintiff must have : 1st, either an absolute or special property in the goods, the subject of the ac-

tion at the time of the conversion ; or, 2d, a right to actual possession. (*Krewson* v. *Purdom*, 13 Or. 563.) Not having had possession of the property, the plaintiff had no title or property therein, neither general or special. (*Chapman* v. *State*, 5 Or. 432 ; *Knowles* v. *Herbert*, 11 Or. 240 ; Bigelow, Torts, 185 ; 1 Hilliard, Torts, 491.) Even if the plaintiff had a special property in the mortgaged property, it cannot maintain trover without having been in possession. (*Holliday* v. *Lewis*, 15 Mo. 403; Williams, Per. Prop. 24.) A mortgagor may sell the property mortgaged, and the mortgagee's remedy is to follow and recover it of the last purchaser. (Jones on Chattel Mortgages, § 444 ; *Jacobs* v. *McCalley*, 8 Or. 124.) Then the plaintiff should allege and prove the amount due on the secured notes ; that the security had been destroyed, and that the mortgagor was insolvent, and unable to pay the secured debt. (*White* v. *Pulley*, 27 Fed. Rep. 436; Jones, Chattel Mortgages, § 449.)

*Wm. M. Ramsey*, *G. G. Bingham* and *J. W. Shelton*, for Respondent.

A mortgagee, *when entitled to possession*, may maintain trover for the conversion of the mortgaged property, upon refusal to surrender it on demand. (Jones, Chattel Mortgages, Sec. 444; *Laing* v. *Perrott*, 12 N. W. Rep. [Mich.] 192; *Smith* v. *Koust*, 7 N. W. Rep. [Wis.] 293 ; *Brown* v. *Cook*, 3 E. D. Smith, 123 ; *Cutter* v. *Copeland*, 18 Me. 127 ; *Badger* v. *Batavia Paper Co.*, 70 Ill. 302; Herman on Chattel Mortgages, Sec. 137; *Spriggs* v. *Camp*, 2 Speers, [S. C.] 181 ; *Peckinbaugh* v. *Quillin*, 12 N. W. Rep. 104; 12 Neb. 586.) Trover and replevin are similar actions, and, generally, trover will lie where replevin could be maintained, and *vice versa*. (Wells on Replevin, Secs. 44–50, and note 2 to Sec. 44 ; *Parmalee* v. *Loomis*, 24 Mich. 243 ; *Ingalls* v. *Bulkley*, 13 Ill. 317 ; Misc. Laws, Chap. 39, § 1.) The mortgagee of chattels is the legal owner of the mortgaged property, especially after default. (*Highland* v. *Badger*, 35 Cal. 404.) We think the right of

action is not affected by the *fact* of possession, but depends on the *right* of possession.    (6 Wait's Actions and Defenses, 154, 155 ; 1 Chitty Pl. 153, 154; 3 Sutherland Dam. 487, 488.)

THAYER, J.—The respondent commenced an action in the court below against the appellant, to recover damages.    The complaint is as follows :

" That plaintiff is a private corporation, duly and regularly incorporated under and by virtue of the general laws of the state of Wisconsin, with power to sue and be sued, to plead and be impleaded, and doing business at the city of Portland, in the state of Oregon, as such corporation.

2d.  That heretofore, to wit, on the 10th day of September, 1884, one A. C. Newman made, executed and delivered to plaintiff his certain chattel mortgage in writing, bearing date that day, upon the following described personal property, situated and being in Union County, State of Oregon, to wit : One sorrel horse, 5 years old, branded W. S. on left shoulder ; one bay horse, 6 years old, branded X on left shoulder ; one bay horse branded B on left shoulder, 8 years old; one sorrel horse, 7 years old, branded $\Lambda$ on left shoulder ; one Bain wagon, $3\frac{1}{2}$ inch steel skein ; to secure the payment by said Newman to plaintiff of his, said Newman's, two certain promissory notes, bearing date the 10th day of July, 1884, for the sum of $475 each, and payable to the order of plaintiff ; which said mortgage was conditioned to the effect that if any attempt should be made to remove from said county of Union, *dispose of,* or injure said property, or any part thereof, by the said Newman or any other person, then, therefrom and thereafter, it should be lawful, and the said Newman thereby authorized plaintiff to treat the debt thereby secured as fully due and payable, and to take such property wherever the same might be found, and to hold or sell and dispose of the same ; which said mortgage was on the 11th day of September, 1884, duly and regularly filed in the office of the county clerk of said Union County, Oregon, and ever since has been, and still is, on file in said office of said county clerk of Union County, Oregon.

3d.   That afterwards, to wit, on or about the 1st day of January, 1885, the said A. C. Newman fraudulently, and in total disregard of the terms and stipulations contained in said chattel mortgage, transferred and delivered said property to said defendant, and the said defendant then and there received and took said property from said Newman, well knowing the terms and conditions of said chattel mortgage.

4th.   That by reason of said fraudulent transfer and delivery of said personal property on said 1st day of January, 1885, by said Newman to said Campbell, plaintiff was on said date, and ever since has been and still is, the special owner of and entitled to the immediate possession of said personal property, and to hold, sell and dispose of the same, and to apply the proceeds arising therefrom in satisfaction of its said mortgage.

5th.   That said sorrel horse, branded W. S. on left shoulder, is of the reasonable value of $125. That said bay horse branded X on left shoulder, is of the reasonable value of $125. That said bay horse branded B on left shoulder, is of the reasonable value of $125. That said sorrel horse branded $\Lambda$ on left shoulder, is of the reasonable value of $125. That said Bain wagon, $3\frac{1}{2}$ inch steel skein, is of the reasonable value of $160.

6th.   That on or about the 2d day of April, 1885, the said defendant, then being in the possession of said personal property, then and there wrongfully and unlawfully converted, disposed of, and appropriated said personal property to his own use and benefit.

7th.   That afterwards, to wit, on or about the 1st day of June, 1885, plaintiff made demand of defendant for the immediate possession of said property, which demand was by said defendant then and there refused ; and said defendant still fails and refuses to deliver said property to plaintiff, or to pay plaintiff the value thereof.

8th.   That by reason of said wrongful and unlawful conversion of said property by defendant, plaintiff is damaged in the sum of $660."

The appellant, after having filed a demurrer to the complaint, and the court had overruled it, filed an answer denying

the allegations of the complaint, except the one which alleges
that the plaintiff is a corporation; and set forth therein as a
defense the insolvency of the said A. C. Newman, and that on
the 16th day of December, 1884, he made a general assignment
of all his property to appellant for the benefit of his creditors,
under the insolvent act of the state; and of the appellant's ac-
ceptance of the trust and qualifying under the act; and of his
being such assignee, and in the discharge of his duties per-
taining thereto continuously up to that time; and that the
plaintiff, said respondent, had failed to present any claim to
him as such assignee.   Also, that on the 27th day of January,
1885, appellant obtained an order from the judge of said cir-
cuit court, as such assignee, for the sale and disposal of said
personal property of the insolvent; and that in pursuance of
such authority, he had sold and disposed of a part of the per-
sonal property of said insolvent.   The appellant also set forth
in said answer, as another defense, that the said Newman had
executed to him on the 11th day of December, 1883, a chattel
mortgage upon certain property described therein, on account
of appellant having become surety upon notes executed by
Newman to one Gangloff; that said mortgage was duly and
regularly filed in the proper clerk's office; had been kept re-
newed, as provided by statute; and that appellant had duly
foreclosed the same in the manner prescribed in the mortgage,
by advertisement and sale; and that the following property, so
mortgaged, had been sold accordingly, viz:

"One (1) sorrel horse, about nine years old, branded W S
on left shoulder; one (1) bay horse, about seven years old,
branded T on right shoulder; one bay horse about nine years
old, three white feet and bald face; one sorrel horse, branded
V on left shoulder; and one Bain farm wagon, 3½ inch steel
skein"; that the sale was made on the 16th day of May, 1885,
to one R. B. Charlton, for the sum of $275, and said property
delivered to said Charlton, and had not since been in the pos-
session of the appellant.

The answer contained other matter set forth as a further and
separate defense, but it was more in the nature of evidence

than facts constituting a defense; it, however, served to show that the respondent's debt, which the mortgage was given to secure, was not by its terms due at the time of the assignment to the appellant; that it was given to secure the purchase price of a threshing machine, appurtenances and fixtures; and that said machinery came into possession of the appellant as assignee of said Newman; that the respondent had demanded it from appellant under and by virtue of said mortgage, and that the latter had delivered it over to said respondent; that it was reasonably worth $750.

There was a reply filed upon the part of the respondent, denying the new matter of the answer.

It will be seen from an observation of the pleading, that the issues between the parties were not so sharply made as good pleading requires. It is very difficult to learn from the complaint whether the respondent counted upon a conversion of the property, or for damages in being deprived of the benefit of a lien thereon. The former would heretofore have been trover and conversion; the latter, trespass upon the case. And the answers of new matter are indirect and uncertain. They do not show that the property mortgaged to the appellant by the mortgage of December 11, 1883, nor that the property assigned to him as assignee under the insolvent act, on the 16th day of December, 1884, included the property in controversy. Both of these attempted defenses, upon the face of the pleading, were wholly irrelevant. The pleader should have averred directly that the property described in the said mortgage, and in the deed of assignment, included the property, or some specific part thereof, described in the said mortgage to the respondent.

It is claimed by the appellant's counsel that the respondent's chattel mortgage only gave him a lien upon the property, and did not vest in him any proprietary interest in it; and he cites *Chapman* v. *State*, 5 Or. 432, and *Knowles* v. *Herbert*, 11 Or. 240, in support of that view; and upon this founds an objection to the complaint, that it is in the nature of an action of trover and conversion, when it should have been in the nature

XIV. Oreg.—30.

of an action on the case. He also, upon the same grounds, claims that the mortgaged property went into the hands of the appellant as assignee by force of the said insolvent act, which transfers all the property of the insolvent to the assignee. The appellant's counsel is logically correct in his position, if the chattel mortgage merely creates a lien, the same as that of a mortgage upon real property, and the authorities referred to would seem to bear out his position. But the similitude between the two kinds of mortgages throughout cannot be maintained. A mortgage upon real property creates neither a *jus in re* nor a *jus ad rem.* Such is the result of the decisions of the courts of a majority of the states, and that is certainly the rule in this state. Can that, however, be said of a mortgage upon personal property, in view of our statute, which provides that " whenever the condition of any mortgage of goods and chattels shall be broken, the mortgagee shall be entitled to the immediate possession of the mortgaged property," etc.? (Misc. Laws, Chapter 39, Sec. 1, p. 688.)

The mortgagee, then, certainly has a right to the thing, and may, if a delivery of it to him on demand is refused, maintain an action in the nature of replevin to recover it. Having a claim upon the property, a right to its possession coupled with the right to have it sold to satisfy his claim is, it seems to me, more than a lien—it is a qualified ownership. Possession is property, when it includes so important a right. The right of possession is a species of title. It is a dominion over the thing; not for all purposes, perhaps, but for a substantial advantage to the party. He may obtain control over it as a matter of right, and hold it as against every one until the mortgagor performs the conditions of the mortgage. The affair at least becomes a pledge of the property, as contradistinguished from an hypothecation. It may be well said, as in the two cases referred to, that a chattel mortgage simply creates, in the outset, a mere lien upon the property, and vests no title in the mortgagee ; but that cannot be said after the conditions of the mortgage are broken. Then a new right arises which is a legal right. The mortgagee becomes invested with a special property in

the thing.   It will, I think, be observed in *Chapman* v. *State*, and *Knowles* v. *Herbert*, *supra*, that the broad declaration there made, "that a chattel mortgage, until it has been foreclosed, conveys no title or interest in the property conveyed by it, except a mere lien to the mortgagee," was not necessary to the decision of the first of said cases, nor appears to have been to that of the second.   And it certainly is not sustained by the decisions of courts in other states.

The Michigan courts come nearer to supporting it than any other of the state courts ;  but they only say that the title does not become absolute until foreclosure.   (Jones, Chattel Mortgages, Chapter 16, Sec. 701.)   It is evident to my mind that the court went too far in those cases ;  that they made use of an expression that is not true in a general sense, and, unless qualified as indicated, is logically incorrect.   If this view is maintained, then an action in the nature of trover and conversion will lie at the suit of the mortgagee for a wrongful interference with the property, by which he is deprived of the right of obtaining the possession of it.   Conceding that he has a special property in the thing mortgaged, after the conditions of the mortgage are broken, concedes to him the right to recover for its unauthorized conversion.   If, therefore, the appellant wrongfully disposed of the property in question, he was liable to damages.

The general assignment by A. C. Newman, and attempt upon his part to transfer the mortgaged property to the assignee, was a breach of the conditions of the mortgage.   The latter, no doubt, had a right to receive the property and to redeem it, but he did not have any right to make an absolute disposition of it ; and his doing that rendered him liable for its conversion.   I have no doubt but that a general assignment in pursuance of the insolvent act would transfer mortgaged property, especially where the conditions of the mortgage had not been broken ;  but the assignee would necessarily take it subject to the rights of the mortgagee, and would render himself liable for a refusal to surrender it up to the mortgagee upon demand, in case the conditions were broken, or for a conversion of it in

like case, without a demand.   No assignment law can impair the obligations of a contract without the consent of the obligee therein, expressed in some form.   I do not see how the appellant could have framed a good plea out of the facts connected with the assignment, or have proved a defense, if allowed to prove them without plea.

The other defense, the prior mortgage to the appellant, is more tenable apparently, and I was unable to discover from the argument of respondent's counsel any good ground for giving the respondent's mortgage a preference over it, assuming that the property was the same in both mortgages ; but I have since looked into the bill of exceptions, and discover there that it was not continued valid. · The statute provides (Misc. Laws, Chap. 6, Tit. 3, Sec. 48), that " every such mortgage shall cease to be valid as against the creditors of the person making the same, or subsequent purchasers or mortgagees in good faith, after the expiration of one year from the filing of the same, or a copy thereof, unless within thirty days next preceding the expiration of the year, the mortgagee, his agent or attorney, shall make and annex to the instrument or copy on file, as aforesaid, an affidavit setting forth the interest which the mortgagee has, by virtue of such mortgage, in the property therein mentioned," etc.   In order to continue a mortgage of this kind valid beyond a year from the time of its filing, the mortgagee, his agent, or attorney, as will be seen from this provision of the statute, must, within the thirty days next prior to the expiration of the year, make the affidavit and annex it to the instrument filed.   The mortgage was filed, as shown by the certificate of the judge and by the copy sent with the bill of exceptions, December 18, 1883, and the affidavit annexed was sworn to November 15, 1884, and marked filed November 16, 1884; so that the affidavit was not annexed within the thirty days next prior to the expiration of the year from the time of filing the mortgage, but two days, at least, before the beginning of the thirty days next preceding the expiration of the year.   Said mortgage was, therefore, not admissible in evidence, without an offer to show that the respondent's

mortgage was not executed in good faith. The circuit court may not, as a matter of fact, have excluded it upon that ground ; but we can see that it was inadmissible as offered, and as no ground is stated for its rejection, we must conclude that it was the one interposed by law. It would have been much more satisfactory if the facts as to which of the two mortgages should take precedence had been fully inquired into ; but the province of this court is confined in this class of cases to the determination of alleged errors appearing upon the record.

The point attempted to be made by the appellant's counsel, that the respondent should have alleged and proved the amount due on the secured notes ; that the security had been destroyed ; and that the mortgagor was insolvent and unable to pay the secured debt, is not, under the view we have taken of the nature of a chattel mortgage after condition broken, tenable. The allegations of the respondent's special ownership in the property, and facts showing its character and extent, and that the appellant had wrongfully converted it, to his damage, &c., were sufficient. It devolved upon the appellant, in order to avoid the effect of the matter alleged, to set forth new matter, showing that by payment or satisfaction of the respondent's mortgage, or in some lawful way, the respondent's rights in the property had been extinguished. And it was not sufficient to show a partial satisfaction. That would be no bar ; nor a partial defense, unless pleaded as such. ( *Webb* v. *Nickerson,* 11 Or. 382.) However, it appears that the appellant had the benefit of it in this case ; at least, the respondent's claim of damages was reduced from $660 to $300, which was conceded upon the argument to have been in consequence of a determination upon the part of the jury that the respondent's claim to the property had been reduced to that sum by the delivery to him of the machinery, horse power and appurtenances covered by his mortgage. The appellant's counsel also makes complaint in regard to the instructions of the court to the jury, but I think they were substantially correct. The record fails to show any such error as would justify a reversal of the judgment appealed from, and it must. therefore, be affirmed.