Argued December 12, 1933; reversed January 2, 1934

# COMMERCIAL SECURITIES, Inc., v. MAST
## (28 P. (2d) 635)

*J. W. McInturff,* of Marshfield (L. A. Liljeqvist, of Marshfield, on the brief), for appellant.

*John D. Goss,* of Marshfield (Goss, Murphy & Skipworth, of Marshfield, on the brief), for respondent.

BAILEY, J. This action was brought by Commercial Securities, Inc., a corporation, against the defendant, R. H. Mast, to recover the sum of $291.92, as damages for the destruction of a 1929 Pontiac coupe by the defendant, on which motor vehicle the plaintiff had a past-due chattel mortgage.

On May 16, 1931, one George Bundy Wasson, for a valuable consideration, executed and delivered to the plaintiff his note for the sum of $350.30, payable in monthly instalments of $29.19 each, beginning on June 15, 1931. At the time the Pontiac coupe was destroyed,

on November 23, 1931, in a collision due to the defendant's negligence, only three monthly instalments had been paid on the mortgage, two by Wasson and one by P. J. Rooney Auto Co., the guarantor on the note. Three monthly instalments were then past due and delinquent. The automobile was completely demolished in the collision, so that its only value was for junk. The remaining parts were taken to Marshfield by P. J. Rooney Auto Co. and sold by that company for $25, and the entire amount was applied by that company in payment of its lien for transportation and storage.

The certificate of title to the car was issued by the state of Oregon on June 6, 1931, and had noted thereon as a lien against the car the chattel mortgage above mentioned. This mortgage, however, was not recorded with the county clerk of Coos county, where Wasson resided and kept the car, or with any other county clerk.

On November 30, 1931, the plaintiff wrote to the defendant, stating to him that the plaintiff had been advised of the accident to Wasson's car and that the plaintiff was the legal owner of the car until such time as Wasson paid the balance due on the contract of purchase, amounting to $262.71, and suggesting that the defendant notify his insurance carrier to that effect, in order that the plaintiff might be protected in the event that a settlement was made. On December 30 the plaintiff again wrote to the defendant, stating that it was desirous of knowing what had been done toward a settlement by the Occidental Insurance Company of the claim for damages to the Wasson car, and reminded defendant that in its former letter it had stated that there was a balance due to plaintiff of $262.71, and that since that time the dealer, P. J. Rooney Auto Co., had advised the plaintiff that the

balance should be $29.21 more than the amount mentioned in plaintiff's former letter, or a total of $291.92, and that this difference was due to the fact that the dealer had advanced one of Wasson's payments when the latter became delinquent. After the receipt of this letter the defendant noted on the bottom thereof that he had notified the insurance company, and that the insurance company had acknowledged the notice and informed him that the matter would be adjusted soon, and returned the letter with such notation to the plaintiff.

The president of the plaintiff corporation at least once, between the time of the collision and the settlement hereinafter referred to, saw the defendant and discussed with him the plaintiff's claim for damages to the motor vehicle.

On or about January 7, 1932, the adjuster for the insurance company which had insured the defendant against liability for property damage to others effected a settlement with Wasson and received from him the following signed release:

"In consideration of the sum of three hundred eighty-five and 00-100 dollars ($385.00) received by me this 7th day of January, 1932, I hereby release and discharge R. H. Mast of and from any and all claims which I now have or may hereafter have, by reason of damage to my property on or about the 23rd day of November, 1931, or of any cause, matter or thing whatsoever."

The amended complaint in this action was filed in January, 1933, and alleges the execution of the mortgage, the breach thereof by the mortgagor, the destruction of the automobile through the negligence of the defendant, the value of the car before and after the accident, the notification by plaintiff to the defendant

of plaintiff's chattel mortgage, the amount due thereon at the time of the accident and the request that settlement for destruction of the automobile be made by the defendant direct to the plaintiff to the extent of plaintiff's claim against the car.

To this complaint the defendant filed an answer admitting its negligence as to the collision and denying that the automobile was of any greater value than $385. Defendant further admitted that plaintiff had notified him that plaintiff claimed to hold a chattel mortgage on the automobile, on which there was unpaid the sum of $291.92. As an affirmative defense the defendant alleged that at the time of the accident and at all times mentioned in its answer Wasson was the legal owner, and in possession, of the Pontiac coupe described in the complaint, and that on January 7, 1932, the said Wasson for a consideration of $385 made, executed and delivered to the defendant the release hereinbefore set out, and further alleged that the release was intended to and did release the defendant from all damages arising out of the accident set forth in the complaint.

In its reply to this answer the plaintiff admitted that Wasson signed the release referred to in the reply, and further alleged that the release was void in so far as the same might affect the rights of the plaintiff, "for the reasons specifically set forth in plaintiff's amended complaint and in this reply". The reply farther alleged that plaintiff did not authorize Wasson to accept the sum specified in the release, or any sum, or to execute said release or any release, and that the amount mentioned in the release was paid and said release was executed without the plaintiff's knowledge or consent, and that the plaintiff had informed the defendant of its rights and interest in and to said auto-

mobile and had demanded in writing and otherwise that any moneys paid on account of said accident covering the damage to said automobile should be paid direct to the plaintiff. Plaintiff further alleged:

"That said money was paid to Wasson and the release executed by him to cover an individual 'equity' in said automobile which Wasson then claimed to have, separate and distinct from the amount of plaintiff's mortgage upon said automobile. Plaintiff is informed and believes and therefore alleges that at the time said money was paid and said release executed by Wasson that the money was so paid with the understanding and agreement that said sum and that said release was to cover Wasson's 'equity' in said car only, and that the amount of plaintiff's mortgage upon said automobile was deducted from the settlement made with Wasson and has ever since said time and still is retained by the defendant."

The action was tried before a jury. At the close of plaintiff's case the court granted defendant's motion for an involuntary nonsuit, and from the judgment entered thereon the plaintiff appeals.

One of the principal questions involved on this appeal is whether or not the holder of a chattel mortgage, after condition broken, can maintain an action for damages against a tort-feasor who injures or destroys the mortgaged property while the same is in the possession of the mortgagor; and, if such an action is maintainable, whether or not a tort-feasor, after knowledge of the mortgagee's claim and request for settlement with him, can settle with the mortgagor so as to preclude recovery from the tort-feasor by the mortgagee for the amount of his mortgage.

The chattel mortgage here in question contained the usual conditions of such instruments, among which was the provision that upon default in payment of any sum

thereby secured the mortgagee should be entitled to immediate possession of the property thereby covered. Section 54-207, Oregon Code 1930, relating to chattel mortgages, provides as follows:

"Whenever the condition of any mortgage of goods and chattels shall be broken, the mortgagee shall be entitled to the immediate possession of the mortgaged property, and when after breach of the condition of any such mortgage the possession of the mortgaged property shall not be delivered up to the mortgagee upon demand by him or by any person duly authorized by him to make such demand of the person or persons having such mortgaged property in possession, the mortgagee may recover the possession of such mortgaged property in the manner provided by chapter III of Title IV of the Code of Civil Procedure."

Under the decisions of this state a chattel mortgage, before condition broken, creates merely a lien: *Ayre v. Hixson,* 53 Or. 19 (98 P. 515, 133 Am. St. Rep. 819, Ann. Cas. 1913E, 659); *Swank v. Elwert,* 55 Or. 487 (105 P. 901); *Templeton v. Lloyd,* 59 Or. 52 (109 P. 1119, 115 P. 1068); *Laam v. Green,* 106 Or. 311 (211 P. 791); *Weatherly v. Hochfeld,* 133 Or. 136 (286 P. 588). And the title of the mortgagor to the property continues and is not extinguished until the lien is foreclosed, either strictly according to the terms of the mortgage or in the manner provided by law. See authorities above cited.

■ After condition broken, the mortgagee is entitled to possession of the property and acquires a qualified title to, or qualified ownership of, the property: *Case T. M. Co. v. Campbell,* 14 Or. 460 (13 P. 324); *Reinstein v. Roberts,* 34 Or. 87 (55 P. 90, 75 Am. St. Rep. 564); *Mayes v. Stephens,* 38 Or. 512 (63 P. 760, 64 P. 319); *Swank v. Elwert,* supra; *Templeton v. Lloyd,* supra;

*First National Bank v. Wegener,* 94 Or. 318 (181 P. 990, 186 P. 41.)

In the last decision cited the court refers to the mortgagee as having a qualified title to the property after there is a breach of the conditions of the mortgage, while in the other authorities cited the mortgagee is referred to as having a qualified ownership or special interest in the mortgaged property, after condition broken. The interest of the mortgagee under such conditions is well explained by Mr. Justice Thayer in *Case T. M. Co. v. Campbell,* supra, in which decision, with reference to the section of the code above quoted, he said:

"The mortgagee, then, certainly has a right to the thing, and may, if a delivery of it to him on demand is refused, maintain an action in the nature of replevin to recover it. Having a claim upon the property, a right to its possession coupled with the right to have it sold to satisfy his claim is, it seems to me, more than a lien—it is a qualified ownership. Possession is property, when it includes so important a right. The right of possession is a species of title. It is a dominion over the thing; not for all purposes, perhaps, but for a substantial advantage to the party. He may obtain control over it as a matter of right, and hold it as against every one until the mortgagor performs the conditions of the mortgage. The affair at least becomes a pledge of the property, as contradistinguished from an hypothecation. It may be well said, as in the two cases referred to, that a chattel mortgage simply creates, in the outset, a mere lien upon the property, and vests no title in the mortgagee; but that can not be said after the conditions of the mortgage are broken. Then a new right arises which is a legal right. The mortgagee becomes vested with a special property in the thing."

■ Either party to the mortgage, even after condition broken and before the mortgagee has taken posses-

sion of the mortgaged property, may maintain an action in replevin for the possession of the property or in trover for its conversion: *Case T. M. Co. v. Campbell*, supra; *Swank v. Elwert*, supra; *Templeton v. Lloyd*, supra; *Backhaus v. Buells*, 43 Or. 558 (72 P. 976, 73 P. 342); *Reinstein v. Roberts*, supra; *Mayes v. Stephens*, supra; *Harvey v. Tidvall*, 48 Or. 558 (87 P. 895). In actions for the possession of the property or for damages for the conversion thereof, it is sufficient if the mortgagee alleges ownership of the property in himself, and on the trial of the case he may prove his interest in such property by the introduction of the mortgage: *Harvey v. Tidvall*, supra; *Reinstein v. Roberts*, supra; *Mayes v. Stephens*, supra; *Case T. M. Co. v. Campbell*, supra.

In order to foreclose his mortgage, it often becomes necessary for, or beneficial to, the mortgagee to acquire possession of the mortgaged property, and the statute expressly grants to him the right to maintain an action for its possession. The right, however, which the courts recognize in the mortgagee to maintain an action in trover for the conversion of the mortgaged property is doubtless based on the fact that the mortgagee has been deprived of his security, and therefore should be permitted to recover from the tort-feasor for the damages which he has suffered by the conversion. In *Eade v. First National Bank*, 117 Or. 47 (242 P. 833, 43 A. L. R. 374), this court, sanctioning a reasonable attorney's fee as part of the mortgagee's damages for conversion, remarked:

"It would have been futile for plaintiffs to have instituted foreclosure proceedings, as execution upon the property was impossible. It became necessary to seek other relief. They were compelled to sue defendant to satisfy their liens. While the proceeding is in the form

of conversion, it is equivalent to an action to collect the amount due on the notes, and the stipulation therein contained concerning attorney's fees must be given force and effect. Otherwise stated, plaintiffs are entitled to as much relief in this action as they would have been in foreclosure proceedings, had it not been for the alleged wrongful act of the bank.''

If the mortgagee is entitled to sue for damages for conversion of the property, there seems to be no good reason why he should not also be permitted to recover from a wrongdoer the amount of his unpaid mortgage, when the mortgaged property has been entirely destroyed by the negligence of such person.

Some of the authorities base the mortgagee's right to recovery on the ground of the injury done to his security: *Mathews v. Silsby Bros.*, 198 Iowa 1392 (201 N. W. 94, 37 A. L. R. 1116); *Arnold v. Broad,* 15 Colo. App. 389 (62 P. 577). In 42 C. J., 762, the rule is stated as follows:

''Either a mortgagor or mortgagee, or bailor or bailee, of a motor vehicle may maintain an action against a third person to recover damages for its injury or destruction, and a settlement by the wrongdoer with either is, in the absence of fraud or collusion, a bar to an action by the other, the amount paid or recovered being held in trust to be applied according to the respective rights of the parties.''

See also: *Miller v. Hortman-Salmen Co., Inc.,* (La. App.) 145 So. 786, and authorities therein cited; *Cresbard Grain Co. v. Farnham,* (S. D.) 244 N. W. 91; *Planters' Bank v. Albert Pick & Co.,* 38 Ga. App. 95 (143 S. E. 441); *Equitable Securities Co. v. Montrose & D. Canal Co.,* 20 Colo. App. 465 (79 P. 747); *Samuell v. Moore Mercantile Co.,* 62 Mont. 233 (204 P. 376).

■ Based on the mandate of our constitution that ''every man shall have remedy by due course of law

for injury done him in his * * * property'' (Article I, § 10), and the foregoing authorities, we hold that the mortgagee, after breach of the conditions of his mortgage, may maintain an action against a wrongdoer for the tortious destruction of the mortgaged property. The great weight of authority is to the effect that the mortgagor, after condition broken, may also maintain an action for the destruction of the property while in his possession. It naturally follows, however, that recovery for the full amount of the damage can not be had by both the mortgagee and mortgagor: *Smith v. Gufford,* 36 Fla. 481 (18 So. 717, 51 Am. St. Rep. 37); *Martin v. Seaboard Air Line Ry. Co.,* 108 S. C. 130 (93 S. E. 336); *Carolina, C. & O. Ry. v. Unaka Springs Lbr. Co.* (vendor and vendee), 130 Tenn. 354 (170 S. W. 591); *Chicago, R. I. & P. Ry. Co. v. Earl,* 121 Ark. 514 (181 S. W. 925, Ann. Cas. 1917D, 552).

In the case of *Chicago, R. I. & P. Ry. Co. v. Earl,* supra, the court in referring to an action by, and settlement with, a mortgagee, as having effect to protect the tort-feasor from a further action against him by the party who might have an equal right as mortgagor to sue, said:

''Our decisions recognize the right of one having a special property under the statute to maintain suit for damages against the railway company that killed or wounded the live stock. St. L., I. M. & So. Ry. Co. v. Biggs, 50 Ark. 169-179, 6 S. W. 724; Railway v. Taylor, 57 Ark. 136, 20 S. W. 1083. Speaking of the right to maintain the suit in Railway v. Biggs, supra, we said:

'''And this is declaratory of the common law, according to the principles of which the bailee of a chattel, whose term is unexpired, being answerable over to the absolute owner, may sue for its full value, if it is injured or destroyed while in his possession, and if he recover, the action of him who has the reversionary interest is gone.'

"Mr. Jones, after speaking of the right of a mortgagee to maintain a suit for damages against a stranger for an injury to mortgaged property, has this to say of the right of the mortgagor:

"'But the mortgagor, if in actual possession, has the same right of action against one who wrongfully injures or converts the mortgaged property, unless the mortgagee has intervened for his own protection. In this respect the rule is the same as in the case of a bailment, namely, the joint owner of the property, or one having a special interest in it, can maintain trespass or case for injury to, or trover for a conversion of, it, but a judgment recovered by either is a bar to a suit by the other for the same cause of action, and it would seem that a voluntary payment of damages by the defendant to one would be a bar to the suit by the other.'—Jones, Chat. Mort. 447a.

"Since the mortgagor in possession has the right to maintain a suit for damages against the wrongdoer for injury to the property, it follows as the logical, if not necessary, corollary of this doctrine that the mortgagor would have the right to settle with the wrongdoer without suit; also that the wrongdoer, having the right to settle, and having settled with the mortgagor, would not be liable over to the mortgagee. This rule is in accord with the commendable policy of compromising and adjusting differences without going to law.

"A wrongdoer who is willing to settle for the injury he has done without litigation, should not be and is not forced to go to law. And when he has settled with either one of two parties who may have the equal right to sue him, he has satisfied the demands of the law. The law contemplates but one settlement or satisfaction for the same injury. Luse v. Jones, 39 N. J. Law 707, 708, 712. See, also, Wilkes v. Railway Co., supra [85 S. C. 346, 67 S. E. 292, 137 Am. St. Rep. 890, 21 Ann. Cas. 79]; Logan v. Wabash Western R. Co., 43 Mo. App. 71."

■ Moreover, the defendant when sued by either the mortgagee or mortgagor may, if he desires to be protected from a second action, cause the other interested party or parties to be brought into court: § 1-314, Oregon Code 1930; *Martin v. Seaboard Air Line Ry. Co.*, supra; *Stotts v. Puget Sound T. L. & P. Co.* (vendor and vendee), 94 Wash. 339 (162 P. 519, L. R. A. 1917D, 214).

■ In *Miller v. Hortman-Salmen Co., Inc.*, supra, the plaintiff was the holder of a certain matured note secured by a chattel mortgage on a Pontiac automobile, on which note there was a balance in excess of $300 due. This motor vehicle was destroyed in a collision with a truck owned by the defendant, and plaintiff instituted the action to recover damages for the loss of the mortgaged property. After deciding that the mortgagee had a right to maintain the action, the court refers to and quotes the foregoing excerpt from 42 C. J., 762, relative to the right of either the mortgagor or mortgagee to maintain an action against a third party to recover damages for injury to, or destruction of, the mortgaged property, and the effect of a settlement with either the mortgagor or mortgagee, and further observes:

"Counsel for defendant contends that, as the plaintiff has failed to introduce any evidence tending to show fraud or collusion on the part of the mortgagor and the insurance carrier, the compromise settlement between them is a valid defense to the present suit. Counsel for plaintiff counters by saying that he concedes it to be the general law that, in the absence of fraud or collusion, a compromise settlement between the mortgagor and wrongdoer is a bar to an action for damages to the security by a mortgage creditor, but that in the instant case the insurance carrier can not plead good faith because the mortgage creditor had

verbally and in writing notified the insurance company of his rights before the claim was compromised.

"There does not appear to be any decision on the point by any court of this state. The case of Cornwell v. Surety Fund Life Co. et al. (1924), 47 S. D. 421 (199 N. W. 126, 128), is pertinent. In that case the administrator of an estate sued an insurance company on a policy seeking to recover the proceeds thereof for the benefit of the creditors of the estate. The insurer pleaded that it had compromised and settled in writing all claims under the policy with the named beneficiary and had no knowledge of any other claimant. In upholding the plea of compromise and settlement as a bar to the plaintiff's suit the court in part said: 'In the absence of any act amounting to fraud or collusion, and in the absence of notice that there are others who have a right to share in the proceeds of the policy, a compromise settlement made by the insurer and the beneficiary named in the policy should relieve the insurer from further liability on the policy.'

"In the recent case of Dorsey v. Metropolitan Life Ins. Co., — La. — (145 So. 304), not yet reported [in state report], we held that a life insurance company, in making settlement under the facility of payment clause, was obliged to make a reasonable investigation to determine who is equitably entitled to receive the proceeds of the policy and that if, after such investigation, the company paid one of the claimants in good faith, the settlement would be a bar to an action by any other claimant. On the merits of the case we found that, while the plaintiff had made verbal demand upon the defendant to be paid the proceeds of the policy before the company had paid the same to defendant, the plaintiff had failed, after a lapse of several days, to carry out the company's instructions to place her claim in writing. We reached the conclusion that the company had acted in good faith and was justified in believing that the plaintiff was not pressing her claim.

"While the two above-cited cases are not exactly in point, they show the disposition of the courts to require insurance companies to make a reasonable in-

vestigation to determine to whom the proceeds of policies should be paid and to act in good faith in making payment. The decisions clearly indicate that the insurance company can not ignore a claimant who is legally entitled to share in the proceeds of the policy after the company has been duly and timely notified of the rights of that party.''

The above rule as laid down by the Louisiana court is sound and not in conflict with the general principle that a settlement, fairly made with either the mortgagee or the mortgagor, is a bar to the action by the other. In the case at bar it is conceded by the defendant that the plaintiff immediately after the accident notified him of its claim and demanded that the damages for the destruction of the car, to the extent of its mortgage, be paid to it. The defendant notified his insurance carrier of plaintiff's claim and demand, and the insurance company was further notified of plaintiff's claim by the mortgagor. Moreover, the certificate of title to the destroyed motor vehicle was notice of the fact that the automobile was encumbered by a chattel mortgage.

The adjuster for the insurance company entirely disregarded plaintiff's notice and demand, and settled with the mortgagor. He knew or should have known that the plaintiff's demand was ahead of the mortgagor's claim.

In referring to a like settlement the Louisiana court in the case last quoted from remarked:

''We can see that, where the owner of a chattel mortgage on an automobile, notwithstanding the fact that it has been properly recorded, fails to notify the insurance carrier of the tort-feasor of his interest in the damaged property, a compromise and settlement between the wrongdoer or his insurance carrier and the mortgagor, in good faith, might well protect the wrong-

doer or his insurance carrier, against any claim for damages made by the mortgage creditor thereafter. But we do not believe that the tort-feasor or his insurance carrier has a right to ignore the claim of the mortgage creditor, after due and proper notice, and then compromise and settle the claim with the mortgage debtor alone. A compromise settlement under those circumstances, in our opinion, can not be successfully pleaded in law or equity as a defense against the mortgage creditor by the tort-feasor or his insurance carrier. To countenance such a practice would lead to most inequitable and unfair results and would invite fraud and collusion in the settlement by compromise of such claims. For instance, an insolvent and delinquent mortgagor would be willing to compromise his claim for very much less than the actual damage to the mortgaged property because his interest or equity might be very small in comparison with that of the mortgage creditor. In the instant case the mortgage creditor held a mortgage on the Pontiac sedan in excess of $300, considering the principal of the note, interest, and attorney's fees. The market value of this second-hand car just before the collision was about $400. Therefore the mortgage creditor had a three-fourths interest or equity, while the mortgagor only had a one-fourth interest or equity in the machine.

"It is our opinion that the special plea of compromise and settlement invoked by the defendant is without merit because the mortgage creditor had properly and timely notified the defendant's insurance carrier of his claim."

The automobile business is one of the largest industries of this country. Motor vehicles are sold, to a great extent, under conditional sales contracts whereby the seller retains title until the vehicle is paid for, or the balance of the purchase price is secured by chattel mortgage. The same legal principle as to action by either the mortgagor or mortgagee is applicable to the vendor and vendee. Fair dealing requires that the

one who tortiously destroys an automobile should recognize the mortgagee's or vendor's interest in the destroyed property when promptly notified and requested to settle therefor with the one who has the prior right to payment. If only one of the parties who have claims against the wrongdoer should bring action against him, the tort-feasor can protect himself by bringing the other party or parties into court, as we have already pointed out.

During the trial of the case the plaintiff offered to prove by Wasson that the settlement by him did not include the plaintiff's claim. While Wasson was on the stand he was asked:

"State whether or not there was any understanding or agreement between you and Mr. Hoffmiller at the time this release was signed, being plaintiff's Exhibit K, concerning whether or not Mr. Hoffmiller, as representative of Mr. Mast's insurance company, would settle direct with the plaintiff for the amount of plaintiff's mortgage on the car."

To this question a general objection was made by the defendant and sustained by the court. Thereupon the plaintiff offered to prove that at the time the release was signed by Wasson it was understood and agreed that the settlement with him did not include plaintiff's mortgage and that settlement would be made direct with the mortgagee. To this offer of proof the defendant objected on the ground that it was an attempt to vary the terms of a written instrument by parol evidence, which objection was sustained.

The jury was then excused and the following testimony of Wasson was taken, as an offer of proof on behalf of plaintiff:

"Q. (By the Court)  What items were mentioned?

"A. The mortgage against the car and we did not know at that time what it was exactly, what it amounted to.

"Q. (By the Court) What did he say about the mortgage?

"A. It wasn't mentioned in the name of a mortgage, it was mentioned on the balance due on the car.

"Q. (By the Court) What did he say about the balance due on the car?

"A. He stated they would take care of it.

"Q. (By the Court) Anything else?

"A. No, nothing else, merely stated if I would sign that release, releasing him so he wouldn't have to chase me all over the country, he would fix it up with the rest of them."

The evidence, or offer of proof, showed that P. J. Rooney Auto Co. had guaranteed the payment of the note; that Wasson's dealings with the mortgagee, the plaintiff in this case, were through Mr. Rooney; and that Wasson wanted the settlement satisfactory to Mr. Rooney. The release was signed at Marshfield while Mr. Rooney was in Portland, and only after the adjuster for the insurance company had assured Wasson, according to Wasson's testimony taken as an offer of proof, that he would take up and settle with Mr. Rooney for the cost of towing and other charges against the car.

Section 9-212, Oregon Code 1930, provides:

"When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore there can be, between the parties and their representatives or successors in interest, no evidence of the terms of the agreement, other than the contents of the writing * * * ."

In referring to the effect of this statute, the late Mr. Chief Justice BURNETT, in *Bagley Co. v. International Harvester Co.,* 99 Or. 519 (193 P. 348), said:

"The controversy is solved by due attention to this clause of the section, 'between the parties and their representatives or successors in interest.' As to such individuals alone, is the statute conclusive. It has been decided several times in this state that the precept embodied in the statute is not applicable between strangers to the instrument in question or between one of the parties thereto and such stranger. The principle is thus stated in 22 C. J., 1292:

"'The rule excluding parol evidence to vary or contradict a written instrument applies only in controversies between parties to the instrument and those claiming under them. It has no application in controversies between a party to the instrument, on the one hand, and a stranger to it, on the other, for the stranger, not having assented to the contract, is not bound by it, and is therefore at liberty when his rights are concerned to show that the written instrument does not express the full or true character of the transaction. And where the stranger to the instrument is thus free to vary or contradict it by parol evidence, his adversary, although a party to the instrument, must be equally free to do so.'

"The text is supported by some hundreds of citations coming from nearly every state in the Union. The doctrine is also taught by the following precedents in this court:" citing numerous Oregon cases.

■ The plaintiff here was not the representative or successor in interest of Wasson, in the sense that those words are used in the statute, and therefore Wasson's testimony, as an offer of proof, was admissible, not only to show that the release did not, and was not intended to, cover plaintiff's claim, but that the settlement with Wasson was not fairly made, if intended by defendant as a bar to plaintiff's action.

■ The defendant contends that the plaintiff failed to prove that at the time of the trial the note, for which the mortgage had been given as security, was not paid. Plaintiff introduced testimony to the effect that at the time of the accident only three monthly instalments had been paid, two by Wasson and one by the guarantor of the note, and that the note had not been fully paid. Mr. Wasson testified that he had made no payments since the August instalment prior to the accident. It is, however, urged by the defendant that the evidence fails to show that P. J. Rooney Auto Co., the guarantor, had not paid the note. If the balance of the note had, prior to the trial, been paid by the guarantor thereof, P. J. Rooney Auto Co. would have been subrogated to all the rights of plaintiff, and the defendant's liability would not, in any way, have been lessened by such payment. If payment by the guarantor was made after the action was begun, it would be proper to continue the litigation in the name of the plaintiff for the benefit of P. J. Rooney Auto Co.: *In re Estate of Volney C. Mead,* ante p. 150 (26 P. (2d) 1103). If payment was made by the guarantor prior to the institution of the action, the defendant, by a plea in abatement, should have raised the question that the action was not prosecuted by the real party in interest.

Defendant's argument that plaintiff has not been injured, because its note is guaranteed by P. J. Rooney Auto Co., assumed by defendant to be financially responsible, is answered adversely to defendant's contention by what has already been said concerning the payment of the note.

■ The record is not entirely clear as to whether Mr. Rooney personally advanced for Wasson the August instalment of $29.21, or P. J. Rooney Auto Co. paid it

as guarantor of the note. If the automobile company paid that instalment, it would be subrogated to the plaintiff's rights under the mortgage, to that extent, and in order to recover for that payment it should be made a party to the action: *Salzwedel v. Pinkley et al.,* 140 Or. 671 (15 P. (2d) 718).

The judgment of the circuit court is reversed and the case remanded for further proceedings not inconsistent with this opinion.

BELT, J., not sitting.

RAND, C. J., concurs in the result.