Argued and submitted July 23, 2001, affirmed February 6, 2002

John R. McKINLEY
and Hope L. McKinley,
*Appellants,*

*v.*

STATE OF OREGON
DEPARTMENT OF MOTOR VEHICLES,
Brian Charles McKinley and John Doe,
*Defendants,*

*and*

FIRST SECURITY BANK, N.A.,
and Denise Deann Quiring,
*Respondents.*

99CV0187MS; A110120

39 P3d 920

Edward E. Hill argued the cause and filed the briefs for appellants.

K. Bruce Knivila argued the cause and filed the brief for respondents.

Before Haselton, Presiding Judge, and Linder and Wollheim, Judges.

HASELTON, P. J.

## HASELTON, P. J.

Plaintiffs appeal, assigning error to the trial court's allowance of summary judgment in favor of defendants Denise Quiring and First Security Bank in a dispute over the priority of interests in an automobile. We conclude that, pursuant to *former* ORS 79.3010(1)(c), *repealed by* Or Laws 2001, ch 445, § 187,[1] defendants have priority over plaintiffs' unperfected security interest in the vehicle. Consequently, we affirm.

Plaintiffs, along with their son, Brian McKinley, were joint title holders of a 1994 Subaru sedan. In early April 1997, plaintiffs, who were apparently estranged from Brian, signed over their ownership interest in the Subaru to Brian[2] and asked the Driver and Motor Vehicle Services Branch of the Oregon Department of Transportation (DMV) to instead list them as security interest holders on the vehicle's certificate of title. However, there is no evidence in the record that DMV ever did, in fact, alter the certificate of title to show plaintiffs as security interest holders. Consequently, there is no evidence in this record that plaintiffs' alleged security interest was ever perfected. *See* ORS 803.097 (1999) (discussed below).

On June 19, 1997, Brian forged a bill of sale and tendered it to DMV. The forged bill of sale transferred all of plaintiffs' rights, title, and interests in the car to Brian. The next day, Brian sold the car to Saturn of Eugene for $8,300. Before completing the sale, Saturn of Eugene examined the car's title and found that Brian was the registered owner and that there were no encumbrances listed on the certificate of title. Saturn of Eugene sold the car to Oregon Auto Center for $8,200, and Oregon Auto Center, in turn, then sold the car to David Holt, Inc., an Oregon automobile dealership. Finally,

---

[1] During the 2001 legislative session, the Oregon Legislature adopted, and the Governor signed, a comprehensive revision to Article 9 of the Uniform Commercial Code. Or Laws 2001, ch 445. That revision, which became effective July 1, 2001, Or Laws 2001, ch 445, § 205, is inapplicable to this dispute. Thus, for purposes of this opinion, our references to the various sections of Article 9 refer to the pre-revision provisions.

[2] Plaintiffs have never argued that they somehow subsequently maintained an ownership interest in the Subaru.

on July 26, 1997, defendant Quiring purchased the car from David Holt, Inc., for $12,363. Quiring financed her purchase through First Security Bank, which took and perfected a security interest in the car. The parties agree that Saturn of Eugene, Quiring, and both of the vehicle's intermediate owners purchased the car in good faith and without knowledge of plaintiffs' alleged security interest, and that First Security Bank similarly financed Quiring's purchase in good faith and without knowledge of plaintiffs' interest.

On April 29, 1999, plaintiffs filed this action, seeking, *inter alia*, a declaration that they had a perfected security interest in the car and, thus, had priority over all other interest holders. Plaintiffs also sought repossession and sale of the car, with the proceeds to be applied toward Brian's debt to them. Defendants Quiring and First Security Bank moved for summary judgment against those claims, arguing that Saturn of Eugene, as a good faith purchaser for value, acquired an interest superior to plaintiffs' unperfected security interest, *see former* ORS 79.3010(1)(c), and that defendants, as subsequent interest holders, have priority over plaintiffs. The trial court agreed and granted defendants summary judgment. Plaintiffs appeal from that judgment.

On appeal, plaintiffs contend that this dispute is governed by Article 2 of the UCC. In particular, plaintiffs argue that Brian, in forging the bill of sale, was, in effect, a "thief" who could not transfer unencumbered title to Saturn of Eugene. Plaintiffs base that argument on ORS 72.4030, which distinguishes between "void" and "voidable" title: *i.e.*, while a person with "voidable" title can transfer good title to a good faith purchaser for value, a person with "void" title has no title to transfer and, thus, cannot transfer good title to any subsequent purchaser. ORS 72.4030(1). *See* Henry J. Bailey III, 1 *The Oregon Uniform Commercial Code* § 2.91, 178 (2d ed 1990) (distinguishing between the concepts of void and voidable title embodied in ORS 72.4030, and noting that "[a] thief or other person who has no title cannot pass good title to anyone, absent authority given by the owner").

Defendants counter that ORS 72.4030(1) is inapplicable because Brian, as the only registered owner of the vehicle, was not a "thief" of title at all. In defendants' view, Brian

had good title, and the validity of that title was unaffected by Brian's actions here. Defendants further argue that, under *former* ORS 79.3010(1)(c), Quiring holds title free of plaintiffs' alleged security interest. We agree with defendants.

ORS 72.4030(1), the provision upon which plaintiffs rely, addresses the power of a seller of goods to transfer title to a good faith purchaser for value:

> "(1)   A purchaser of goods acquires all title which the transferor had or had power to transfer except that a purchaser of a limited interest acquires rights only to the extent of the interest purchased. A person with voidable title has power to transfer a good title to a good faith purchaser for value. When goods have been delivered under a transaction of purchase the purchaser has such power even though:

> "(a)   The transferor was deceived as to the identity of the purchaser; or

> "(b)   The delivery was in exchange for a check which is later dishonored; or

> "(c)   It was agreed that the transaction was to be a 'cash sale'; or

> "(d)   The delivery was procured through fraud punishable as larcenous under the criminal law."

Thus, ORS 72.4030(1), by its express terms, deals only with the ability of a seller to transfer "title" in goods.

Plaintiffs' argument under ORS 72.4030(1), as we understand it, could be viewed in either of two ways. First, plaintiffs' argument could be understood to suggest that their alleged security interest in the car gives them an ownership interest in the car itself, such that "title" to the car was effectively vested in both plaintiffs and Brian, the registered owner. Alternatively, plaintiffs' argument might be construed to suggest that they somehow view their alleged security interest itself as property subject to the protections of Article 2, and that Brian, by transferring title in the car free of the alleged security interest, functionally transferred "void" title to that "property."

1.      However characterized, plaintiffs' reliance on ORS 72.4030(1) is misplaced for several reasons. First, although we need not resolve the issue, it is doubtful that security interests in vehicles actually constitute a title interest in those goods. In particular, the official commentary to pre-revision UCC Article 9-101 indicates: "This Article * * * adopts neither a 'title theory' nor a 'lien theory' of security interests."[3] Because Article 9 is a comprehensive statutory scheme for determining the effect of security interests in various circumstances,[4] the "[r]ights, obligations, and remedies under [Article 9] do not depend on the location of title." Original UCC § 9-101 Official Commentary; *see also former* ORS 79.2020, *repealed by* Or Laws 2001, ch 445, § 187 (the provisions of Article 9 apply "whether title to collateral is in the secured party or the debtor"). There is nothing in the Oregon Vehicle Code that suggests that a security interest is an interest in a vehicle's title.[5] Rather, while a security interest is *perfected* by notation on a vehicle's certificate of title, a security interest in a vehicle can be *created* independently of the vehicle's certificate of title. Thus, plaintiffs' assumption that their alleged security interest in the Subaru constitutes an interest in the vehicle's title is, at best, tenuous.

Second, to the extent that plaintiffs argue that we should treat their alleged security interest as an independent property interest, it is clear that that interest is not a "good" subject to the protections of Article 2. ORS 72.1020 (the scope of Article 2 is generally limited to transactions in goods); ORS

---

[3] *See Schultz v. Bank of the West*, 325 Or 81, 87 n 3, 934 P2d 421 (1997) (describing role of official commentary in construing Oregon's codification of the UCC: "Reliance on decisions from other jurisdictions and on the commentary to the UCC is based on the fact that the Oregon legislature adopted the UCC with little debate and, at least in part, intended to further the goal of uniform treatment of commercial matters covered by the code.").

[4] *See* Grant Gilmore, 1 *Security Interests in Personal Property* § 10.1 (1965) (while there are exceptions, "[t]he first thing to be noticed about Article 9 is its comprehensiveness: it is all-embracing, all-devouring; it covers everything").

[5] Nor does plaintiffs' position find support in pre-UCC decisional law. The well-established common-law rule in Oregon is that, generally, "a chattel mortgage does not transfer the title to the mortgaged property, but is only a lien interest thereon." *Ayre v. Hixson*, 53 Or 19, 31, 98 P 515 (1908). *But see Commercial Securities, Inc. v. Mast*, 145 Or 394, 400-02, 28 P2d 635 (1934) (while Oregon generally subcribes to the lien theory of chattel mortgages, a chattel mortgagee, upon default, acquires a "qualified ownership" interest in the collateral and "may maintain an action in replevin for possession of the property or in trover for its conversion").

72.1050 ("goods," for purposes of Article 2, includes all things "which are movable at the time of identification to the contract").

Finally, even if ORS 72.4030 could otherwise be read to *generally* encompass the relative interests of secured parties and subsequent purchasers of collateral, the more particular provisions of Article 9, which deal specifically with the relative rights of secured parties *vis-à-vis* subsequent purchasers, would necessarily control. *See* ORS 174.020 (expressing legislative policy that, when interpreting statutes, particular provisions override inconsistent general provisions). That policy is expressed in ORS 72.4030 itself, which states that the "rights of other purchasers of goods and of lien creditors are governed by [Article 9] on secured transactions." ORS 72.4030(5); *see also* James J. White & Robert S. Summers, 4 *Uniform Commercial Code* § 33-16, 367-68 (4th ed 1995) (relying on the UCC § 2-403(4), the source of ORS 72.4030(5), for the proposition that "the drafters intended that priority disputes between secured creditors and subsequent purchasers be governed exclusively by Article 9" rather than the "more generous" provisions of UCC § 2-403; "courts should use care to limit their consideration to Article 9 in those circumstances in which a buyer is competing with a secured creditor"). Accordingly, we reject plaintiffs' argument that this dispute is governed by ORS 72.4030(1) and, instead, look to Article 9 to determine the parties' relative rights.

■ Under Article 9, as a general rule, a secured party's interest in collateral continues even after the sale of collateral to third parties. *Former* ORS 79.3060(2), *repealed by* Oregon Laws 2001, ch 445, § 187; *former* ORS 79.2010, *repealed by* Or Laws 2001, ch 445, § 187 ("Except as otherwise provided by the Uniform Commercial code, a security agreement is effective according to its terms * * * against purchases of the collateral and against creditors."). There are, however, exceptions. Defendants rely on one such exception, which is codified in *former* ORS 79.3010:

> "(1)    Except as otherwise provided in subsection (2) of this section, an *unperfected* security interest is subordinate to the rights of:
>
> "* * * * *

"(c)   In the case of goods, instruments, documents and chattel paper, a person who is not a secured party and who is a transferee in bulk or other buyer not in ordinary course of business, or is a buyer of farm products in ordinary course of business, to the extent that the person gives value and receives delivery of the collateral without knowledge of the security interest and before it is perfected." (Emphasis added.)

Defendants argue that Quiring acquired title unencumbered by plaintiffs' alleged security interest because Saturn of Eugene, as a good faith purchaser for value, acquired an interest superior to plaintiffs' unperfected security interest, and that defendants, as subsequent interest holders, have the same priority over plaintiffs that Saturn of Eugene acquired. That argument, in turn, depends on defendants' assumption that plaintiffs' alleged interest was unperfected at the time Saturn of Eugene purchased the car from Brian.

Assuming, without deciding, that plaintiffs ever had a properly *created* security interest in the Subaru, there is no evidence in this record that that interest was ever *perfected*. Perfection of security interests in automobiles is governed by ORS 803.097 (1999). As we noted in *BankAmerica Housing Services v. P.D.N. & Assoc.*, 159 Or App 264, 268, 977 P2d 369 (1999), under ORS 803.097 (1999) "security interests in vehicles can be perfected only by notation on the certificate of title recorded with the Department of Transportation." Here, there is no evidence in the record that plaintiffs ever submitted a legally sufficient application[6] to perfect their interest to DMV, much less that DMV *ever* noted such an interest on the title, thereby perfecting that interest. *See* ORS 807.097 (1999). Plaintiffs, as the parties seeking a declaration that they had a perfected security interest in the Subaru, had the burden, in opposing defendants' motion for summary judgment, of adducing *prima facie* proof of perfection. *See* ORCP 47 C (in responding to a motion for summary judgment, "[t]he adverse party has the burden of producing evidence on any issue raised in the motion as to which the adverse party

---

[6] *See* OAR 735-020-0020 (discussing applications for notation of security interest).

would have the burden of persuasion at trial"). They failed to do so.

Given that reality, defendants possess title free of plaintiffs' security interest. *Former* ORS 79.3010(1)(c). As indicated by the text of *former* ORS 79.3010(1)(c), that provision affords priority to buyers not in the ordinary course of business who, without knowledge of the security interest and before it is perfected, give value for and receive possession of collateral that was a good. In the context of that provision, "goods" are "all things that are movable at the time the security interest attaches," *former* ORS 79.1050(1)(h), *repealed by* Or Laws 2002, ch 445, § 187; a buyer outside the ordinary course of business is one who does *not* constitute a buyer in the ordinary course of business as defined by ORS 71.2010(9) (1999);[7] and "value" means "any consideration necessary to support a simple contract." ORS 71.2010(44)(d).

Here, the parties do not dispute that the car was a "good," that Saturn of Eugene was a buyer not in the ordinary course of business, and that Saturn of Eugene gave value to Brian in exchange for the car. Given plaintiffs' failure to adduce proof that their alleged security interest in this case was *ever* perfected, *former* ORS 79.3010(1)(c) controls, and defendants have title free[8] of plaintiffs' alleged security interest. The trial court properly awarded summary judgment.

Affirmed.

---

[7] ORS 71.2010(9) (1999) provided:

" 'Buyer in *ordinary course of business*' means a person who in good faith and without knowledge that the sale to the person is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a seller in the business of selling goods of that kind but does not include a pawnbroker."

[8] *Former* ORS 79.3010(1) does not, by its express terms, afford subsequent purchasers clean title free of the interests of unperfected secured parties. Nevertheless, the shelter principle, which states that a purchaser of goods acquires the same interest that his transferor had, has the practical effect of affording subsequent purchasers clean title. *See* Original UCC § 9-301 Official Commentary at comment 9 ("The sanction imposed by § 9-301(1) is that members of protected classes take free of an unperfected security interest.").